**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AASIYAH MEEKS, Individually and as next friend and mother of one minor child, A.M., ABONY PERSON, Individually and as next friend and mother of two minor children, I.P. and N.P., AKERA DAVIS, Individually and as next friend and mother of two minor children, A.M. and J.M., ALEANTRA MONTGOMERY, Individually and as next friend and mother of three minor children, D.T.1, D.T.2 and W.W., ALEEN TRUMBO, Individually and as next friend and mother of three minor children, T.B.1, T.B.2, and T.J., ALEX MCCARTY, Individually and as next friend and mother of one minor child, W.H., ALEXANDRIA CORNEILIUS, Individually and as next friend and mother of three minor children, A.B., M.C. and T.S., ALEXSIS JENKINS, Individually and as next friend and mother of one minor child, J.J., ALI GRIFFITH, Individually and as next friend and father of one minor child, A.P., ALICIA KUYKENDALL, Individually and as next friend and mother of two minor children, S.C.1 and S.C.2, ALICIA LITTLE, as next friend and legal guardian of four minor children, A.I., J.J., N.J. and O.B., ALICIA MORREAU, Individually and as next friend and mother of one minor child, L.H., ALICIA WEIDMAN, Individually and as next friend and mother of one minor child, K.W., ALICIA WILSON, Individually and as next friend and mother of five minor children, A.W.1, A.W.2, K.C., S.C. and M.W., ALISHA MANNING, Individually and as next friend and mother of three minor children, J.M.1, J.M.2 and M.M., ALISHA PATTON, Individually and as next friend and

1

mother of one minor child, T.P., ALISHA PRINGLE, Individually and as next friend and mother of three minor children, A.R.1, A.R.W and E.R., ALLEN REID, Individually and as next friend and father of one minor child, A.R., ALLEREE BILLINGS, Individually and as next friend and mother of two minor children, H.H. and M.H., ALMA FOX, Individually and as next friend and mother of two minor children, T.E. and V.W., ALMA HILL, as next friend and legal guardian of four minor children, E.H., J.T., K.T. and P.T., ALONZO GOODMAN, Individually and as next friend and father of two minor children, A.R. and E.R., ALYSSA BROWN, Individually and as next friend and mother of two minor children, A.B.1 and A.B.2, AMANDA SMITH, Individually and as next friend and mother of two minor children, A.C. and R.C., AMANDA BURGESS, Individually and as next friend and mother of five minor children, C.W., D.W., M.W., T.W. and K.B., AMANDA ENGELMANN, Individually and as next friend and mother of two minor children, J.M.1 and J.M.2, AMANDA LORICK, Individually and as next friend and mother of two minor children, S.T. and D.L., AMANDA MCGRATH, Individually and as next friend and mother of two minor children, S.M. and D.M., AMANDA ROSS, Individually and as next friend and mother of one minor child, A.C., AMANDA SMITH, Individually and as next friend and mother of six minor children, A.S.1, A.S.2, A.S.3, J.S.1, J.S.2 and J.S.3, AMANDA SPOONER, Individually and as next friend and mother of five minor children, B.S., G.S., I.S., T.S. and W.S., AMARA TRIPPLETT, Individually and as next friend and mother of one minor child, T.H., AMBER HEILIG, Individually and as next friend

2

and mother of four minor children, E.H.1, E.H.2,
P.S., and T.S., AMBER TEDHAMS, Individually
and as next friend and mother of two minor
children, A.C. and S.C., AMIE DINNAN,
Individually and as next friend and mother of one
minor child, R.R., AMY BOYD, Individually and
as next friend and mother of two minor children,
J.B. and J.T., AMY SCROGGINS, Individually
and as next friend and mother of three minor
children, A.S.1, A.S.2, and T.S., ANAESHA
THOMAS, Individually and as next friend and
mother of five minor children, A.T., J.T., L.T.,
K.T. and S.T., ANCHINA LINTZ, Individually
and as next friend and mother of three minor
children, A.H., B.H. and J.L., ANDRE O'DANIEL
JR, Individually and as next friend and father of
two minor children, S.D. and T.D., ANDRE
STEPHENSON, Individually and as next friend
and father of three minor children, A.S.1, A.S.2
and A.S.3, ANDREA LOYD, Individually and as
next friend and mother of one minor child, D.L.,
ANDREA MANUEL, Individually and as next
friend and mother of one minor child, A.K.,
ANEISHA EVANS, Individually and as next
friend and mother of four minor children, T.E.1,
T.E.2, G.F. and A.F., ANGEL SCHMIDT,
Individually and as next friend and mother of two
minor children, R.Z.1 and R.Z.2,   ANGELA
GARNER, Individually and as next friend and
mother of one minor child, Z.C., ANGELA
HUNTER, Individually and as next friend and
mother of three minor children, L.H., S.H. and
Z.H., ANGELA WILBORN, Individually and as
next friend and mother of one minor child, G.W.,
ANGELIQUE CRANDELL, Individually and as
next friend and mother of two minor children, K.S.
and Z.C., ANGIELIC REED, Individually and as

3

next friend and mother of one minor child, L.R., ANIKA ANDERSON, Individually and as next friend and mother of three minor children, A.C., N.C. and X.W., ANITA WICKHAM, Individually and as next friend and mother of four minor children, A.W., A.R., J.F.1 and J.F.2, ANNYONNE MCGEE, Individually and as next friend and mother of one minor child, C.M., ANTANIKA LAWAL, Individually and as next friend and mother of two minor children, K.S. and Z.L., ANTHONY JACKSON, Individually and as next friend and father of three minor children, A.J.1, A.J.2 and E.B., ANTOINETTE BROWN, Individually and as next friend and mother of three minor children, A.T., C.T, and T.D., ANTON MCBRIDE, Individually and as next friend and father of three minor children, Z.M., M.M. and K.M., APRICOTT TEED, Individually and as next friend and mother of five minor children, A.T., D.T., G.T., S.T.1 and S.T.2, APRIL THOMAS, Individually and as next friend and mother of five minor children, A.T.1, A.T.2, A.T.3, A.J. and M.J., ARTELIA WALKER, Individually and as next friend and mother of three minor children, C.T., M.W. and M.H., ARTIS CAMPBELL, Individually and as next friend and father of two minor children, A.C. and M.C., ASHA NAPIER, Individually and as next friend and mother of one minor child, A.T., ASHLEIGH PRIEUR, Individually and as next friend and mother of two minor children, A.M. and Z.M., ASHLEY BRAND, Individually and as next friend and mother of three minor children, D.J., G.C.1 and G.C.2, ASHLEY ESTRADA, Individually and as next friend and mother of one minor child, A.E., ASHLEY MOSLEY, Individually and as next friend and mother of two minor children, A.T. and

A.H., ASHLEY PRICE, Individually and as next friend and mother of one minor child, K.W., ASHLEY RAU, Individually and as next friend and mother of one minor child, D.P., ASHLEY WILSON, Individually and as next friend and mother of one minor child, A.W., AUDRA KING, Individually and as next friend and mother of one minor child, S.N., AUDREY FERGUSON, Individually and as next friend and mother of three minor children,  D.L., L.L. and S.L., AUTUMN PROFFITT, Individually and as next friend and mother of one minor child, A.S., AVIAN STEPHENS, Individually and as next friend and mother of two minor children, A.S.1 and A.S.2., BARBARA BAILEY, as next friend and legal guardian of four minor children, G.C., K.C., T.S. and Z.C.,  BARBARA MITCHELL, Individually and as next friend and mother of two minor children, C.B. and T.M., BELINDA ALLEN, Individually and as next friend and mother of three minor children,    A.A.1,  A.A.2 and  A.A.3, BEVERLY MALIK, Individually and as next friend and mother of one minor child, A.M., BIANCA TORBERT, as next friend and legal guardian of one minor child, T.J., BILLY GORDEN, Individually and as next friend and father of four minor children, B.G., K.G, S.G., S.H.  and  D.B.,  BOBBIE  THEODORE, Individually and as next friend and mother of one minor child, B.T., BOBBY SAWYERS, as next friend and legal guardian of one minor child, J.A., BRADLEY HELMS, Individually and as next friend and father of one minor child, B.H., BRANDI FLICK, Individually and as next friend and mother of four minor children, A.F.1, A.F.2, N.V. and Z.V., BREAUNNA SMITH, Individually and as next friend and mother of two minor

children, M.M.1 and M.M.2, BRENDA HOLMES, Individually and as next friend and mother of two minor children, I.G. and M.H., BRENDA JACKSON, Individually and as next friend and mother of five minor children, A.J., A.E., T.J., M.J. and J.J., BRENDA WILLIAMS, Individually and as next friend and mother of one minor child, D.W., BREONA ONEY, Individually and as next friend and mother of one minor child, A.W., BRIDGET KENNEDY, Individually and as next friend and mother of one minor child, D.D., BRITNAY CAVAZOS, Individually and as next friend and mother of three minor children, B.R., A.H. and D.H., BRITTANY MICHAUD, Individually and as next friend and mother of four minor children, A.K.1, A.K.2, A.M.1 and A.M.2, BRITTNEY BARKER, Individually and as next friend and mother of two minor children, A.T. and K.T., BRITTNEY LEWIS, Individually and as next friend and mother of two minor children, R.B. and T.W., BRITTNIE GARDNER, Individually and as next friend and mother of two minor children, B.B.1 and B.B.2, BRONSON CARNES, Individually and as next friend and father of one minor child, B.C., BROOKE GARRISON, Individually and as next friend and mother of one minor child, F.S., CAITLYN BRENNAN, Individually and as next friend and mother of two minor children, C.S. and P.S., CAMERON CARROLL, Individually and as next friend and father of two minor children, C.A. and N.A., CANDI KELLEY, Individually and as next friend and mother of one minor child, S.S., CANDICE WILLIAMS, Individually and as next friend and mother of one minor child, A.W., CANDIS DIXON, Individually and as next friend and mother of two minor children, R.C. and S.C.,

CAPITOLA ASHLEY, Individually and as next friend and mother of one minor child, J.A., CARL HALL, Individually and as next friend and father of one minor child, C.H., CARLI BOLLEY, Individually and as next friend and mother of two minor children, A.V.1 and A.V.2, CARLYN ABRON, Individually and as next friend and mother of three minor children, A.A., I.A. and J.A., CARRIE BLAISDELL, Individually and as next friend and mother of three minor children, J.H., S.H. and W.C., CARRIE GREEN, Individually and as next friend and mother of one minor child, C.B., CARRIE MILLER, Individually and as next friend and mother of one minor child, L.M., CARRIE ROBINSON, Individually and as next friend and mother of five minor children, C.W., K.W., S.W., S.R.1 and S.R.2, CARY NEELEY, Individually and as next friend and mother of two minor children, A.N. and S.N., CARYLYNN PRESCOTT, Individually and as next friend and mother of two minor children, B.L. and S.A., CASSANDRA EVANS, Individually and as next friend and mother of three minor children, B.E., M.E.1 and M.E.2, CASSIDY WADE HARRISON, Individually and as next friend and mother of two minor children, A.H. and D.M., CATIERA HILL, Individually and as next friend and mother of two minor children, C.F.1 and C.F.2, CECILIA NELSON, Individually and as next friend and mother of one minor child, C.K., CEIA MAYS, Individually and as next friend and mother of one minor child, A.K., CERONE NEELY, Individually and as next friend and mother of one minor child, A.M., CHAD SCHLOSSER, Individually and as next friend and father of two minor children, J.S.1 and J.S.2, CHALONDA JONES, Individually and as next

7

friend and mother of four minor children, J.C., J.J.1, J.J.2 and M.L., CHAMEKA DAVIS, Individually and as next friend and mother of one minor child, P.B., CHANTAL COX, Individually and as next friend and mother of one minor child, D.C., CHANTELLE JOHNSON, Individually and as next friend and mother of one minor child, M.W., CHANUWAN BROOKS, Individually and as next friend and mother of one minor child, S.M., CHARLEY HOWELL, Individually and as next friend and mother of three minor children, A.W., F.G. and R.W., CHARNITA HERRON, Individually and as next friend and mother of one minor child, L.H., CHELON DANIELS, Individually and as next friend and mother of four minor children, E.S., J.S., M.S. and Q.S., CHEREESE GREEN, Individually and as next friend and mother of four minor children, B.G. 1, B.G. 2 and Q.B., CHEVELLA DAVIS, Individually and as next friend and mother of two minor children, A.D. and T.D., CHINIKA YOUNG, Individually and as next friend and mother of three minor children, C.Y., S.T. and Z.T., CHIQUITA SCOTT, Individually and as next friend and mother of two minor children, O.S. and Z.S., CHLOE BELL, Individually and as next friend and mother of four minor children, A.B., F.B., M.B. and O.B., CHRISTINA LEGRAND, Individually and as next friend and mother of one minor child, T.L., CHRISTINA TYLER, Individually and as next friend and mother of four minor children, A.W., J.R., K.R. and M.W., CHRISTINE KEYES, Individually and as next friend and mother of one minor child, L.R., CHRISTOPHER BUZZARD, Individually and as next friend and father of one minor child, C.R., CIANNA BATSON, Individually and as next

friend and mother of two minor children, C.T. and C.R., CIARA MONTGOMERY, Individually and as next friend and mother of two minor children, R.M. and Z.M., CINDI MCBROOM, Individually and as next friend and mother of one minor child, P.G., CLARA BROOM, Individually and as next friend and mother of one minor child, R.P., CLIFTON SHULTZ, Individually and as next friend and father of one minor child, B.S., CLINIQUE B-WALLACE, Individually and as next friend and mother of four minor children, A.W., E.W., J.W. and S.W., CONNELL WADE, Individually and as next friend and father of one minor child, O.W., CORA CATHEY, Individually and as next friend and mother of one minor child, J.C., COREY BAKER, Individually and as next friend and father of one minor child, H.J., CORTNEY PAIGE, Individually and as next friend and mother of three minor children, E.P., L.C. and Z.C., CREOLA IVY, Individually and as next friend and father of one minor child, D.I., CRYSTAL HANDLEY, Individually and as next friend and mother of five minor children, E.F. 1, E.F.2, E.F.3, E.F.4 and T.P, CRYSTAL LAW, Individually and as next friend and mother of one minor child, N.T., CRYSTAL LOPP, Individually and as next friend and mother of three minor children, C.L., D.L. and K.L., CRYSTAL OLLIE, Individually and as next friend and mother of one minor child, J.W., JUANA JONES, Individually and as next friend and mother of two minor children, A.J.1 and A.J.2, JUNETTA CHRISTIAN, Individually and as next friend and mother of two minor children, K.C. and S.C., JUSTINE LEIBING, Individually and as next friend and mother of one minor child, K.A., JUSTIS GONZALES, Individually and as next

friend and mother of one minor child, L.B., KACETTA GREAR, Individually and as next friend and mother of two minor children, K.G.1 and K.G.2, KADEJA SMITH, Individually and as next friend and mother of two minor children, J.L. and J.B., KAITLYN TOBIN, Individually and as next friend and mother of one minor child, K.B., KAMALA BLOUNT, Individually and as next friend and mother of two minor children, K.B.1 and K.B.2, KAMESHA WESTBROOK Individually and as next friend and mother of two minor children, J.T.1 and J.T.2, KANISHA HOLMES, Individually and as next friend and mother of one minor child, D.S., KAPRESHA BARBER, Individually and as next friend and mother of three minor children, J.B., K.B. and T.H., KAREN BENNETT, Individually and as next friend and mother of one minor child, D.R., KAREN MORGAN, Individually and as next friend and mother of three minor children, A.M.1, A.M.2 and A.S., KATARA SEALEY, Individually and as next friend and mother of two minor children, K.S. and M.S., KATRINA STRONG, Individually and as next friend and mother of three minor children, K.P.1, K.P.2 and K.P.3, KAYAIRRA BEARD, Individually and as next friend and mother of two minor children, E.L.1 and E.L.2, KEAIRA LOVE, Individually and as next friend and mother of one minor child, L.W., KEANION RANDOLPH, Individually and as next friend and mother of three minor children, A.J., D.J. and J.R., KEIARAH GREEN, Individually and as next friend and mother of one minor child, E.R., KEISHA SMITH, Individually and as next friend and mother of one minor child, T.W., KEITH HORTON, Individually and as next friend and father of two minor children, K.H. and K.C.,

KENCHELLE BEDENFIELD, Individually and as next friend and mother of four minor children, A.P., C.P., K.B. and G.P., KENDRALIA SWEENEY, Individually and as next friend and mother of two minor children, D.B. and M.B., KENYA FRANKLIN, Individually and as next friend and mother of two minor children, Z.B. and J.F., KENYETTA WATERFORD, Individually and as next friend and mother of three minor children, D.G., K.W. and G.W., KENYRDA HOUSTON, Individually and as next friend and mother of two minor children, K.H.1 and K.H.2, KENYUN PITTMAN, Individually and as next friend and mother of one minor child, P.P., KEONA TAYLOR, Individually and as next friend and mother of two minor children, N.T. and N.H., KERI JO WELLS, Individually and as next friend and mother of two minor children, J.W. and T.W., KEVIN HOLLAND, Individually and as next friend and father of one minor child, E.N., KEYLA COOPER, Individually and as next friend and mother of four minor children, R.R., A.R., K.R. and D.C., KIMBERLY DAVIS, Individually and as next friend and mother of one minor child, D.T., KIMBERLY FROST, Individually and as next friend and mother of two minor children, G.L. and C.F., KIMBERLY GADDY, Individually and as next friend and mother of three minor children, K.G.1, K.G.2 and D.G., KIMBERLY HOFFMAN, Individually and as next friend and mother of two minor children, E.H. and J.H., KIMBERLY WILLIAMS, Individually and as next friend and mother of one minor child, Z.S., KIRA BARNES, Individually and as next friend and mother of two minor children, E.B. and P.B, KIRA WILLINGHAM, Individually and as next friend and mother of two minor children, S.W. And T.W.,

11

KIRKLYNN BRIGGS, Individually and as next friend and mother of one minor child, S.E., KIZZY MILES, Individually and as next friend and mother of two minor children, K.H.1 and K.H.2, KOKEETA JONES, Individually and as next friend and mother of one minor child, T.H., KORETHEA SANDERS, Individually and as next friend and mother of four minor children, D.J., K.W.1, K.W.2 and K.C., KRISTY JACKSON, Individually and as next friend and mother of two minor children, J.J. and O.C., KRISTY THOMAS, Individually and as next friend and mother of three minor children, H.D., W.M. and Z.M., KRYSTAL DISMUKE, Individually and as next friend and mother of two minor children, K.P.1 and K.P.2, KYNA EDWARDS, Individually and as next friend and mother of two minor children, C.G. and K.G., KYRIE MORGAN, Individually and as next friend and mother of two minor children, D.M.1 and D.M.2, LACEY CASE, Individually and as next friend and mother of two minor children, C.H. and R.H., LACHANDRA GRIGGS, Individually and as next friend and mother of four minor children, J.G.1, J.G.2, T.B. and T.G., LADELIA HAMPTON, Individually and as next friend and mother of one minor child, T.H., CRYSTLE DAVIDSON, Individually and as next friend and mother of one minor child, J.F., CYARA SHARPE, Individually and as next friend and mother of two minor children, G.B and W.B., CYEENAH KALIMAH, Individually and as next friend and mother of four minor children, C.K.1, C.K.2, N.A.1 and N.A.2, CYNTHIA FERGUSON-WILLLIAMS, Individually and as next friend and mother of two minor children, D.W. and R.W., CYNTHIA WARREN, Individually and as next friend and mother of one

minor child, R.R., DAJANEKE STOCKMAN, Individually and as next friend and mother of one minor child, K.S., DANIAL ARNOLD, Individually and as next friend and father of one minor child, D.A., DANIEL GILL, Individually and as next friend and father of one minor child, A.G., DANIEL PERRYMAN, Individually and as next friend and father of one minor child, N.R., DANIELLE CHAPMAN, Individually and as next friend and mother of one minor child, M.C., DANIELLE PARKER, Individually and as next friend and mother of four minor children, A.S., D.O., M.O. and S.S., DANJUMA GREER SR., Individually and as next friend and father of one minor child, D.G., DANYELL CROOM, Individually and as next friend and mother of five minor children, S.C., M.C., D.C., Z.S. and K.G., DARIESHA BOBO, Individually and as next friend and mother of two minor children, J.D. and J.S, DARLENE HARDEN, Individually and as next friend and mother of one minor child, B.H., DARRYL SHOEMO, as next friend and legal guardian of one minor child, R.W., DASHAWN MALONE, Individually and as next friend and mother of one minor child, A.M., DASHIRA BALKNIGHT, Individually and as next friend and mother of one minor child, J.G., DAVID BISHOP, Individually and as next friend and father of one minor child, N.B., DAWN SKYRME, Individually and as next friend and mother of two minor children, D.S.1 and D.S. 2, DAYNA MATER, Individually and as next friend and mother of one minor child, D.M., DAYNA NORTON, Individually and as next friend and mother of one minor child, S.C., DAYQUICHIESA MARTIN, Individually and as next friend and mother of four minor children, D.W., D.J.1,   D.J.2 and L.E.,

DAYVEE BOWENS, Individually and as next
friend and mother of one minor child, R.B.,
DEAISHA GREENLEE, Individually and as next
friend and mother of two minor children, N.G. and
S.G., DEBONY THOMAS, Individually and as
next friend and mother of two minor children,
J.S.1 and J.S.2, DEBRA ALTHEIMER-
RICHARDSON, as next friend and legal guardian
of four minor children, A.R., G.R., S.R. and Z.R.,
DEBRA CAMPBELL, Individually and as next
friend and mother of one minor child, S.C.,
DEBRA SOTO, Individually and as next friend
and mother of three minor children, E.S.1, E.S.2
and S.T., DEETTA BRIGHT, Individually and as
next friend and mother of four minor children,
D.B., H.B., J.B.1 and J.B.2, DEIDRA
MANSFIELD, Individually and as next friend and
mother of four minor children, M.L., M.H., L.S.
and E.S., DEKECIA HUTCHINS, Individually
and as next friend and mother of two minor
children, J.H.1 and J.H.2, DELANDRA BOONE,
Individually and as next friend and mother of three
minor children, C.B., M.B. and R.B., DELORES
DAVIS, Individually and as next friend and
mother of one minor child, D.B., DEMETRIA
KILLIN, Individually and as next friend and
mother of two minor children, D.J. and J.K.,
DEMITA MILLER, Individually and as next
friend and mother of two minor children, D.M. and
J.M., DENISE RANKIN, Individually and as next
friend and mother of two minor children, K.S. and
K.M., DEQUARUS DUDLEY, Individually and
as next friend and father of two minor children,
D.D.1 and D.D.2, DEQUINTRE R. SMITH,
Individually and as next friend and father of one
minor child, D.S., DEREK DAVIS, Individually
and as next friend and father of three minor

children, A.D., C.D.1 and C.D.2, DESHNA
MARSHALL, Individually and as next friend and
mother of one minor child, S.M., DEVA JAMES,
Individually and as next friend and mother of one
minor child, A.W., DEWAYNE GREEN,
Individually and as next friend and father of three
minor children, J.M., K.P. and M.P., DIANDRE
WALKER, Individually and as next friend and
father of three minor children, A.W., B.W. and
D.W., DI'ANNDRA DAVIS, Individually and as
next friend and mother of two minor children,
J.D.1 and J.D.2, DOMINIQUE STRONG,
Individually and as next friend and mother of one
minor child, T.R., DOMINQUE GREEN,
Individually and as next friend and mother of one
minor child, M.D., DONALD GRANT,
Individually and as next friend and father of one
minor child, D.G., DONDRELL SMITH SR.,
Individually and as next friend and father of two
minor children, T.W. and D.S., DORLESHA
BARNETT, Individually and as next friend and
mother of one minor child, D.J., DUNJEANETTA
DARLING, Individually and as next friend and
mother of one minor child, S.D., DUSTIN
WEFEL, Individually and as next friend and father
of three minor children, C.B., L.W. and L.G.,
EARTHLY UPCHURCH, Individually and as next
friend and father of four minor children, K.U., S.U.
1, S.U. 2 and T.U., EBONY HALL, Individually
and as next friend and mother of two minor
children, A.M.1 and A.M.2, EDSEL SANDERS,
Individually and as next friend and father of one
minor child, T.S., EDWARD EDELEN,
Individually and as next friend and father of three
minor children, J.E.1, J.E.2, and P.E., EMMA
CUNNINGHAM, Individually and as next friend
and mother of three minor children, A.B., C.B. and

Z.B., ERIC HUNTER SR., Individually and as next friend and father of one minor child, R.H., ERIC MOORE, Individually and as next friend and father of one minor child, R.M., ERIC TILLMAN, Individually and as next friend and father of three minor children, E.T., J.S. and J.T., ERIKA JENKINS, Individually and as next friend and mother of three minor children, A.J., J.J. and K.D., ERIN NORD, Individually and as next friend and mother of one minor child, J.C., EULEEN THORTON, Individually and as next friend and mother of seven minor children, A.W., C.W., D.W., E.W., J.W., N.S. and R.W., EURIDICE SYKES, Individually and as next friend and mother of one minor child, K.B., EVELYN JACKSON, Individually and as next friend and mother of one minor child, C.R., FELICIA SMITH, Individually and as next friend and mother of one minor child, J.S., FRANCINE BOONE, as next friend and legal guardian of one minor child, K.B., FREDRICK BROWN, Individually and as next friend and father of one minor child, S.B., FREDRICK BELL, Individually and as next friend and father of one minor child, A.B., GABRIEL WILSON, Individually and as next friend and mother of one minor child, L.D., GABRIELLE MCCLAIN, Individually and as next friend and mother of two minor children, K.W.1 and K.W.2, GABRIELLE MIGUEL, Individually and as next friend and mother of five minor children, A.M., J.M.1, J.M.2, J.M.3. and M.M., GAIL WOODEL, Individually and as next friend and mother of one minor child, E.W., GARDELL HARALSON, Individually and as next friend and father of one minor child, A.H., GENERAL TYLER, Individually and as next friend and father of seven minor children, A.T., B.T., C.T. 1, C.T. 2,

C.T. 3, G.T. and J.D., GENEVA COOK,
Individually and as next friend and mother of two
minor children, A.S. and I.B., GERALD WARE,
Individually and as next friend and father of four
minor children, R.W., G.F., H.F. AND J.F.,
GILBERT REYNA, Individually and as next
friend and father of three minor children, V.R.,
G.R.1 and G.R.2, GLADYS BEAL, Individually
and as next friend and mother of two minor
children, K.J. and Z.J., GLORIA PERRY-
WALKER, Individually and as next friend and
mother of three minor children, A.T., J.H. and J.P.,
GLORIA SPEARMAN, Individually and as next
friend and mother of one minor child, B.S.,
GOLDIE ALOMAR, Individually and as next
friend and mother of two minor children, G.A.1
and G.A.2, GRACE TAYLOR, Individually and as
next friend and mother of two minor children,
A.M. and J.L., GWENDALYN COLLINS,
Individually and as next friend and mother of one
minor child, R.C., HAZEL BROWN, Individually
and as next friend and mother of one minor child,
J.B., HEATHER EASTMAN, Individually and as
next friend and mother of one minor child, A.E.,
HEATHER LAY MARVE, Individually and as
next friend and mother of one minor child, N.L.,
HEBONY CALDWELL, Individually and as next
friend and mother of one minor child, F.R.,
HESNA MCFARLAND, Individually and as next
friend and mother of one minor child, M.I.,
HOLLIE MAGUIRE, Individually and as next
friend and mother of one minor child, L.M., IKEA
TILLIS, Individually and as next friend and
mother of one minor child, S.T., IRVING
CROWDER, Individually and as next friend and
father of three minor children, C.C., D.C., and I.C.,
IYANA AL-AMIN, Individually and as next

friend and mother of two minor children, D.A. and
J.S., JACKIE PUTNEY, Individually and as next
friend and mother of two minor children, B.G. and
J.L., JACOBI GAINES, Individually and as next
friend and mother of one minor child, J.G.,
JACQUELINE WEAVER, as next friend and legal
guardian of one minor child, T.W., JACQULINE
CLARK, Individually and as next friend and
mother of two minor children, A.E. and N.C.,
JACQULYN DOUGLAS, Individually and as next
friend and mother of one minor child, J.M., JADA
MCCLAIN, Individually and as next friend and
mother of one minor child, D.W., JAMANDA
ROSS, Individually and as next friend and mother
of four minor children, J.R.1, J.R.2, J.R.3 and
J.R.4, JAMEELA JAMES, Individually and as
next friend and mother of two minor children,
A.H. and Z.T., JAMES THOMAS JR.,
Individually and as next friend and father of three
minor children, J.T.1, J.T.2 and J.T.3, JAMIE
HELTZEL, Individually and as next friend and
mother of four minor children, A.G., B.A., N.F.
and  O.H., JAMILYA WHITNER, Individually
and as next friend and mother of two minor
children, A.J. 1 and A.J. 2, JANAKA COLLINS,
Individually and as next friend and mother of three
minor children, J.J., J.B. and V.B., JANAY
COLEMAN-SANDERS, Individually and as next
friend and mother of two minor children, J.S. and
M.S., JANICE BROADNAX, Individually and as
next friend and mother of two minor children,
J.B.1 and J.B.2, JAQUITA NELSON, Individually
and as next friend and mother of three minor
children, B.R., C.B. and Q.B., JASMINE
LAWLER, Individually and as next friend and
mother of five minor children, J.W.1, J.W.2,
J.W.3, J.W.4 and L.W., JASMINE SNOW,

Individually and as next friend and mother of two minor children, J.S. and L.A., JASON COULTER, Individually and as next friend and father of three minor children, J.C.1, J.C.2 and A.C., JEANET WATSON, Individually and as next friend and mother of one minor child, A.W., JEFF BERRY, Individually and as next friend and father of one minor child, S.S., JEFFREY AMPY, Individually and as next friend and father of one minor child, E.A., JEFFREY CURL, Individually and as next friend and father of one minor child, J.C., JENEYAH MCDONALD, Individually and as next friend and mother of two minor children, J.M.1 and J.M.2, JENNA BIEL, Individually and as next friend and mother of two minor children, J.Z. and J.A., JENNIFER BARNETT, Individually and as next friend and mother of three minor children, A.J., I.J. and J.J., JENNIFER HUSOCKI, Individually and as next friend and mother of one minor child, M.S., JENNIFER NUDELL, Individually and as next friend and mother of two minor children, G.N. and L.N., JENNY STAGGS, Individually and as next friend and mother of two minor children, I.F. and M.S., JEREMY MCDOWELL, Individually and as next friend and father of three minor children, J.M.1, J.M.2 and J.M.3, JESSICA BRACKINS, Individually and as next friend and mother of two minor children, A.B. and S.A., JESSICA GETTER, Individually and as next friend and mother of three minor children, J.G.1, J.G.2 and T.H., JESSICA GODFREY, Individually and as next friend and mother of two minor children, J.T.1 and J.T.2, JESSICA GRAMS, Individually and as next friend and mother of two minor children, K.T. and L.G., JESSICA HELMS, Individually and as next friend and mother of one minor child, D.H., JESSICA

HORNE, Individually and as next friend and mother of five minor children, A.H., D.B., H.H., R.E. and T.B., JESSICA JOHNSON, Individually and as next friend and mother of two minor children, N.J. and Y.J., JESSICA MATTHEWS, Individually and as next friend and mother of one minor child, K.P., JESSICA PEPPLER, Individually and as next friend and mother of one minor child, J.P., JESSICA PINTACURA, Individually and as next friend and mother of three minor children, F.J., K.J. and I.J., JESSICA STRONG, Individually and as next friend and mother of one minor child, E.S., JESSICA WASHINGTON, Individually and as next friend and mother of three minor children, J.E.1, J.E.2 and R.E., JESSICA WEBBER, Individually and as next friend and mother of one minor child, N.M., JILL GROVES, Individually and as next friend and mother of two minor children, A.G. and C.G., JODI BENEDICT, Individually and as next friend and mother of two minor children, A.B. and J.H., JODIE WOODWORTH, Individually and as next friend and mother of one minor child, G.A., JOEL MORRIS, Individually and as next friend and father of five minor children, L.M.1, L.M.2, L.M.3, L.M.4 and L.M.5, JOESY GINDLESPERGER, Individually and as next friend and mother of one minor child, J.G., JOEWILLIE BROADNAX, Individually and as next friend and mother of three minor children, J.M.1, J.M.2 and J.M.3, JOHN LEE WEBB JR., Individually and as next friend and father of one minor child, J.W., JOHNNIE VARY, Individually and as next friend and mother of three minor children, J.V., J.J. and A.T., JOHNNY ROBERTS JR., Individually and as next friend and father of one minor child, J.R., JOLINE MARTIN,

Individually and as next friend and mother of one minor child, E.P., JOLYNN JACKSON, Individually and as next friend and mother of two minor children, B.J. and L.J., JOSEPH BELIN, Individually and as next friend and father of four minor children, A.B., S.B., Z.B.1 and Z.B.2, JOSEPHINE SEAY, Individually and as next friend and mother of one minor child, J.S., JOYCE KLINE, as next friend and legal guardian of one minor child, S.E., and JOYCELAND FISHER, Individually and as next friend and mother of two minor children, D.G. and P.P.,

      Plaintiffs,

vs.                                Case No.

UNITED STATES OF AMERICA,

      Defendant.

---

## COMPLAINT

### Introduction

1.    This action is a joinder action brought by individuals identified administratively as Federal Tort Claims Act ("FTCA") claimants ("claimants") who experienced physical and emotional injuries as a result of the negligence of the United States Environmental Protection Agency ("EPA") in its mishandling of the

Flint Water Crisis. This action for personal damages is brought against the United States of America ("USA") under the FTCA, 28 U.S.C. § 2671 et seq.

2.     The EPA failed to follow several specific agency mandates and directives governing its conduct, which resulted in injury to the claimants. Upon notice of a contaminant in the water system which presents a substantial and imminent danger, the EPA is required to first determine whether the state and local agency is taking timely action protective of public health. If timely and protective action is not being taken, the EPA is required to bring a Section 1431 emergency action. However, despite notice of the danger as early as October 2014, the EPA failed to take the mandatory steps to determine that Michigan and Flint authorities were not taking appropriate action to protect the public from toxic water and failed to file the emergency Section 1431 action until January 2016.

3.     In addition, the EPA is required to provide advice and technical assistance to states and local providers which are not in compliance with the requirements of the Safe Water Drinking Act ("SWDA") and, if compliance is not achieved in thirty days, the EPA is required to issue an order or commence a civil action to obtain compliance. The EPA took none of those mandatory steps. Failure to fulfill these mandatory duties constitutes a violation of the FTCA.

4.     Administrative claims for payment of damages totaling $1,456,000,000.00 have been pending before the EPA for more than 6 months. The EPA has neither accepted nor denied the administrative claim.

## Jurisdiction, Venue, Parties and Exhaustion of Administrative Remedies

5.     This Court has subject matter jurisdiction over civil actions against the USA pursuant to the FTCA, 28 U.S.C. § 1346(b) (1).

6.     Venue is proper in cases involving tort claims against the USA where the plaintiff resides or where the act or omission complained of occurred. 28 U.S.C.§ 1402(b); 32 C.F.R. 750.32(a).

7.     The acts and omissions complained of occurred in this Judicial District.

8.     On March 21, 2017, March 23, 2017, April 27, 2017, May 11, 2017, May 17, 2017, May 17, 2017, and May 30, 2017, 1078 claimants, each of whom is a resident of the City of Flint, Michigan, through their counsel submitted individual notices of claims to the EPA for damages arising out of the EPA's negligent handling of the Flint Water Crisis. These 1078 individuals are identified in the case caption herein.

9.     More than 6 months has elapsed since the filing of the claims.

10.    To date, the EPA has not issued a Final Decision.

11.     Claimants have exhausted all administrative remedies and pursuant to the FTCA are now entitled to proceed with this action in the United State District Court. 28 U.S.C. § 2675(a).

12.     This case is related to six other currently pending cases: *Jan Burgess v. United States*, Civil No. 4:17-cv-11218; *William Thomas v. United States*, Civil No. 4:18-cv-10243; *Tracy Abraham v. United States*, Civil No. 2:19-cv-10625; *Nicolette Adams*, Civil No. 4:18-cv-13166; *Alline Anderson v. United States*, Civil No. 4:18-cv-12725; and *Verenda Berry v. United States*, Civil No. 2:19-cv-12766.

### Statement of Facts

13.     This lawsuit against the EPA arises out of the environmental catastrophe known world-wide as the "Flint Water Crisis."

14.     On April 25, 2014, the Michigan Department of Environmental Quality ("MDEQ") authorized the City of Flint to distribute to its more than 30,000 customers drinking water pumped from the highly corrosive, polluted and toxic Flint River.

15.     For almost 50 years, Flint water users enjoyed plentiful, clean fresh water purchased from the Detroit Water and Sewage Department ("DWSD").

16.     The water received from DWSD included a "corrosion–inhibiting additive, which lined pipes and connections to minimize the level of lead leaching into Drinking water." *Management Alert: Drinking Water Contamination in Flint,*

*Michigan, Demonstrates a Need to Clarify EPA Authority to Issue Emergency Orders to Protect the Public,* Office of Inspector General, United State Environmental Protection Agency, Office of Inspector General, October 20, 2016, p 1. ("OIG")

17.    Flint Emergency Managers Edward Kurtz and Darnell Earley, with the approval of Michigan's Governor and State Treasurer, discontinued Flint's water service from DWSD and approved use of the Flint River as an interim source of water until an alternative water pipeline was completed in late 2016 or 2017.

18.    The Flint River water was toxic and 19 times more corrosive than the DWSD supplied water.

19.    The Flint River water required substantial corrosion control treatment in order for it to be safe and useable because many Flint homes and businesses have lead service lines and plumbing making them more susceptible to high levels of corrosion and the leaching of lead.

20.    It is undisputed that the MDEQ and Flint failed or refused to use corrosion control during the entire time that the Flint River Water was supplied to Flint water users. Flint water users were exposed to the toxic and highly corrosive Flint River water for at least 539 days or 1 year, 5 months and 21 days. OIG, p 1.

21.    On October 16, 2015, by order of the Governor, the Flint water system was re-connected to the DWSD system.

22.     Although DWSD water was restored to the Flint water system, the exposure to highly corrosive Flint River water ruined the lead service lines, hot water tanks and other plumbing apparatus.

23.     As of November 25, 2016, the two and one half year anniversary of the switch to the Flint River, the water delivered to the people of Flint remained unsafe to drink, use for cooking or use for bathing.

24.     Throughout the spring and summer of 2014, the water supplied to Flint water users was malodorous, tasted bad and appeared to be cloudy with floating dirt or metallic particles. OIG, p 1.

25.     Flint water users received a notice in August 2014 of an acute coliform Maximum Contaminant Level (MCL), a monthly coliform MCL violation in August 2014, and a monthly coliform MCL violation in September 2014.

26.     Jan Burgess (Burgess), a Flint resident and water user, made numerous complaints to the state and city officials about the poor water quality she was experiencing at her home in Flint. Neither the state nor the city gave her satisfactory information about how and when the water quality would be improved.

27.     Burgess determined that she was living in an environmental crisis and turned to the EPA for assistance.

28.     Burgess discovered on the EPA's website a section entitled "Enforcement." The web page gave her instructions on how to report violations of

environmental laws and regulations. The Enforcement page stated that if she elected to provide contact information with her report, that information may be "shared by EPA with appropriate administrative, law enforcement, and judicial entities engaged in investigating or adjudicating the tip or complaint."

29.    On October 14, 2014, Burgess presented to the EPA her complaint and requested an investigation. She wrote:

> Tip or Complaint: Earlier this year, the City of Flint, changed its water supply from the City of Detroit (Lake Huron) to the Flint River. This river has a very long history of pollution. Since this change, our drinking water has tripled in cost and the quality varies daily. Some days it smells like an over-chlorinated swimming pool; other days, like pond scum. It is often brown in color and frequently has visible particles floating in it. We've been under several boil water advisories due to e-coli contamination. Just this morning our local paper reports that General Motors Engine plant has shut off Flint River water to the plant due to the over-chlorination and the fears that the water will cause corrosion. . . .

> People in Flint have had to resort to buying bottled water or having purification systems installed in their homes. Some residents have even had private wells dug. The water is not safe to drink, cook or wash dishes with, or even give to pets. We worry every time we shower. The City of Flint is still very economically depressed and most citizens cannot afford to do anything other than use the river water. Many of them have NO water at all due to the extremely high water bills. There is reasonable suspicion that reports have been falsified. Some residents have had water tested privately and the results are not even close to those reported by the City. Calls to the City and State have resulted in no action whatsoever.

> Violation Still Occurring? Yes

> State DEP/DEQ/DEM Notified? No

30.    On October 23, 2014, EPA representative Jennifer Crooks (Crooks) responded to Burgess' email stating in part that "the Flint River water is a different quality than the Lake Huron raw water; and requires additional treatment to ensure an acceptable quality drinking water." She emphasized that the poor quality water was only a temporary problem because Flint planned to join the Karegnondi Water Authority (KWA) in 2016. She said that the "MDEQ is aware of the multiple complaints from citizens and is working closely with the Flint Water Department to ensure the distribution system and the water treatment processes work more efficiently and more effectively."

31.    Burgess heard nothing more from the EPA until April 8, 2016, when investigators of the EPA's Office of Inspector General contacted her for an interview regarding her report. Burgess met with the EPA investigators on April 9, 2016, for about 1.5 hours.

32.    At the time of interview, the EPA investigator advised Burgess and her counsel that the EPA had received 120 complaints or notices of environmental violations and that most, if not all, had not been investigated.

33.    The duration of time between Burgess' report of an environmental violation and the opening of an investigation was 543 days or 1 year, 5 months and 26 days.

34.    In January 2015, Flint resident LeeAnne Walters (Walters) called the EPA regarding water issues that she was experiencing at her home in Flint. Walters informed the EPA that she and her family members were becoming physically ill from exposure to the water coming from her tap.

35.    On February 26, 2015, Crooks wrote an email to MDEQ and EPA representatives. Crooks noted that Walters complained of "black sediment in her water." Crooks noted that the iron contamination was so high that the testing instrumentation could not measure it. She went on to say:

> "But, because the iron levels were so high [Michael Glasgow, Flint Utilities Administrator], suggested testing for lead and copper. WOW!!!! Did he find the LEAD! **104 ppb** [parts per billion] She has 2 children under the age of 3. . . Big worries here . . .
>
> I think Lead is a good indication that other contaminants are also present in the tap water that obviously were not present in the compliance samples taken at the plant . . .
>
> We also talked about Dr. Joan Rose from Michigan State being on the Flint Tech Advisory committee . . . would want to dive further into this . . . she and her family are also exhibiting the rashes when exposed to the water, and her daughter's hair is falling out in clumps."

36.    In a second email on February 26, 2015, Crooks remarked that Miguel Del Toral (Del Toral) of the EPA was of the opinion that the "black sediment" in Walters water was actually lead. Crooks stated that "Miguel is wondering if Flint is feeding phosphates. Flint must have Optimal Corrosion Control Treatment-is it phosphates?"

37.   Crooks continued: "From a public health perspective, can we assume that the high lead levels in Mrs. Walters' neighborhood are isolated to just her area? Or are they more widespread?"

38.   In an email dated February 27, 2015, Crooks offered MDEQ representative Stephen Busch (Busch) expert advice through "our expert," Mike Schrock at EPA Cincinnati Research.

39.   On February 27, 2015, MDEQ representative Busch advised Del Toral and Crooks that "[MDEQ] will take the [offer of expert assistance] under consideration." He further stated that Flint had an "Optimized Corrosion Control Program" in place.

40.   Del Toral, on February 27, 2015, advised Crooks that the situation in Flint was very dangerous. Del Toral stated that "the particulate can contain very high concentrations of lead (hundreds of thousands of ppb Pb) which is much higher concentration than lead paint, so even small particles can result in high lead values."

41.   By late January 2015, the news media regularly reported the widespread water quality issues and resulting illnesses occurring in Flint. A casual internet search in January, February or March of 2015, would have produced scores of news reports about the environmental crisis developing in Flint. The EPA was monitoring these media reports.

42.    In February 2015, the "EPA Region 5 received the first Flint drinking water distribution system lead sampling test result, indicating a requirement of corrosion control." OIG, p 4.

43.    On March 3, 2015, Flint collected a follow-up sample at the Walters home. This time the reading was 397 ppb (more than 20 times the EPA "Action Level" of 15 ppb).

44.    On March 18, 2015, Walters informed Crooks of the March 3rd reading. Crooks asked Walters to fax the report to her. In an email to Del Toral, Busch, and two other MDEQ employees, Crooks asked, "any thoughts on how to respond to her? I'm running out of ideas."

45.    By March of 2015, Del Toral was communicating with Region 5 EPA personnel that there was a serious public health crisis developing in Flint caused by contaminated water.

46.    Walters also provided the EPA with reports of elevated blood lead levels for her children, demonstrating that consuming lead-laced water had poisoned her children.

47.    In early April 2015, Walters contacted Dr. Marc Edwards (Dr. Edwards), an environmental engineering professor from Virginia Tech University, and asked him to come to Flint to address the water contamination problems. Dr.

Edwards, in April 2015, took water samples and shared his test results with the EPA.

48.     On April 23, 2015, Del Toral wrote an email to the MDEQ and asked one question: "What's Flint doing now (post Detroit) for corrosion control treatment?"

49.     On April 24, 2015, the MDEQ wrote back that "Flint is not practicing corrosion control treatment at the Water Treatment Plant (WTP)."

50.     On April 25, 2015, Del Toral prepared an email to the MDEQ and his EPA colleagues stating "given the very high lead levels found at one home and the pre-flushing happening at Flint, I'm worried that the *whole town* may have much higher lead levels than the compliance indicated, since they are using pre-flushing ahead of their compliance sampling." (Emphasis added).

51.     On April 27, 2015, Del Toral travelled to the Walters home to investigate the circumstances causing the elevated lead readings. The EPA also tested neighboring homes. Ultimately, testing and investigation determined that the city-owned service line of about 25 feet running from the water main to the external shut off valve was made of lead and a source of the lead contamination. In addition, the Walters home had galvanized pipe which became "seeded" with lead due to corrosive water. According to Del Toral, the lack of corrosion control treatment was a major contributing cause for the release of lead into the Walter's water system.

52.     On May 6, 2015, the EPA returned to the Walters home to supervise the service line replacement activities.

53.     By June 2015, "EPA Region 5 had information that the city of Flint exceeded the lead level at which corrosion control was required, and that Flint was not using a corrosion inhibitor. EPA Region 5 also had information that at least four homes had concentrations of lead in household drinking water above the action level of 15 parts per billion." OIG, p 5.

54.     On June 10, 2015, the EPA offered additional technical assistance on response managing the different water quality issues in Flint, including the presence of lead in the drinking water.

55.     On June 24, 2015, Del Toral prepared a memorandum entitled "High Lead Levels in Flint Michigan-Interim Report" ("Del Toral Report"). The Del Toral Report stated that "a major concern from a public health standpoint is the absence of corrosion control treatment in the City of Flint for mitigating lead and copper levels in the drinking water." The Report stated further that "the lack of mitigating treatment is especially concerning as the high lead levels will likely not be reflected in the City of Flint's compliance samples due to the sampling procedures used by the City of Flint for collecting compliance samples."

56.     On June 25, 2015, Rita Bair ("Bair"), Branch Chief Region 5, Ground Water and Drinking Section, responded to Del Toral's Interim Report wanting to

know in an email why Del Toral characterized the lead problem in Flint as "widespread."

57.     Del Toral responded to Bair via an email on Thursday June 25, 2015, stating that:

> "The widespread high lead is my judgement based on a couple of decades of working with lead issues and I stand by it despite the limited data set from Flint. A simple application of scientific principles to the circumstances in Flint along with the limited data are enough to know that there is a problem there. They have had no corrosion control treatment in place for over a year now and they have lead service lines. It's just basic chemistry on lead solubility. You will have high lead leaching into the water where you are doing nothing to mitigate that. We don't need to drop a bowling ball off every building in every town to know that it will fall to the ground in all of these places....The only reason we don't have more data is because the City of Flint is flushing away the evidence before measuring for it...there is zero chance or close to zero chance that you will ever capture any of the high lead.... the high lead levels we are seeing in Flint are mainly particulate lead, which is released sporadically in most cases, so unfortunately for Flint in their attempts to avoid capturing lead, these particles are being captured despite their attempts not to capture lead. **I understand that this is not a comfortable situation, but the State is complicit in this and the public has a right to know what they are doing because it is their children that are being harmed. At a MINIMUM, the City should be warning residents about the high lead, not hiding it telling them that there is no lead in the water. To me that borders on criminal neglect**. The only people that question the science are the ones that have a vested interest in not finding lead. When we look, we find it. When they look, they either don't find it or if they find it, they dismiss it as the resident's plumbing or use some other fabricated reason." (Emphasis added)

58.     Sometime between June 24, 2015 and June 30, 2015, Del Toral provided his Interim Report to Walters, who shared it with Curt Guyette (Guyette), an investigative reporter with the ACLU of Michigan.

59.     Guyette confirmed the accuracy of the Del Toral Report by interviewing Del Toral, who confirmed that the assertions contained in the Report were accurate.

60.     Guyette then approached Flint for comment. On June 30, 2015, Mayor Dwayne Walling (Walling) notified EPA Region 5 Director Dr. Susan Hedman (Hedman) that an EPA Region 5 staff member was speaking publicly about the Flint environmental crisis.

61.     On July 1, 2015, Hedman informed Walling that the Del Toral Report "should not have been released outside the agency." She recommended to Walling that Flint retain two EPA experts on lead and drinking water and that Flint follow the lead of the MDEQ. Walling asked Hedman to advise the ACLU that Flint should follow the advice of the MDEQ.

62.     On July 2, 2015, Hedman said to Walling that "I am not inclined to have any further communication with the ACLU representative." She told Walling that he could tell Guyette that what he was given was a "preliminary draft" and that "it would be premature to draw any conclusions based on that draft."

63.     On July 9, 2015, Michigan media outlets raised the serious environmental and public health issues discussed in the Del Toral Report—the serious issues which had been well known to the EPA since at least January of that year. The threat to the public health of the citizens of Flint became nationwide news.

64.     On July 10, 2015, in response to the media reports of a public health crisis in Flint, Hedman issued a press statement which stated in part that the "EPA will work with the Michigan DEQ and the City of Flint to verify and assess the extent of lead contamination issues and to ensure that Flint's drinking water meets federal standards."

65.     On July 14, 2015, Guyette asked the EPA if phosphate should be used as corrosion control. Although the answer to this question is an unequivocal "YES," the EPA provided an evasive and convoluted response in an apparent desire to protect the MDEQ. When Guyette asked the EPA to comment on whether the sampling methods were minimizing the lead readings, the EPA again provided an evasive response.

66.     On July 21, 2015, EPA representatives had a conference call with MDEQ representatives. The MDEQ argued with the EPA about the necessity of immediate corrosion control treatment in light of what it alleged was "compliant

sampling." The EPA expressed concern about the validity of the MDEQ position, because the EPA had doubts as to whether the sampling was done properly.

67.   At the July 21, 2015 meeting, the EPA informed the MDEQ that Flint should be instructed to "start corrosion control treatment as soon as possible." The MDEQ acknowledged that it had already been in contact with EPA experts Darren Lytle and Mike Shock. The EPA did not establish any deadlines for the commencement of corrosion control.

68.   On August 10, 2015, the EPA asked the MDEQ for an update on the status of the corrosion control treatment. No information was forthcoming.

69.   On August 17, 2015, the MDEQ sent a letter to Flint recommending that Flint implement corrosion control treatment as soon as possible, but no later than January 1, 2016, and fully optimize its treatment within six months.

70.   On August 28, 2015, the EPA asked the MDEQ to provide Flint's corrosion control compliance plan.

71.   On August 31, 2015, the MDEQ responded by disputing that corrosion control was necessary, arguing that MDEQ sampling established compliance.

72.   On August 31, 2015, Dr. Edwards published the results of his water testing and reported that 20% of the samples were over the 15 ppb EPA Action

Level. Dr. Edwards' report revealed that 42% of Flint homes tested had levels of 5 ppb or higher.

73.     On August 31, 2015, the EPA and MDEQ engaged in a conference call to strategize a response to Dr. Edwards' report on the emerging major public health crisis.

74.     The EPA suggested that the participants could discredit Dr. Edwards' findings because his labs were not "certified."

75.     The EPA noted that Dr. Edwards' website "is putting added pressure on the MDEQ and EPA to ensure that Flint addresses their lack of optimized corrosion control treatment in an expedited manner in order to protect the residents from exposure to high lead levels."

76.     The EPA acknowledged in this call that "to delay installation of corrosion control treatment in Flint would likely cause even higher levels of lead over time as Flint's many lead service lines are continuously in contact with corrosive water."

77.     In September 2015, 11 months after receiving the Burgess complaint, EPA Region 5 briefed EPA Headquarters' Office of Enforcement and Compliance Assurance ("OECA") about Flint's water crisis for the first time.

78.     OECA immediately advised Region 5 to take Safe Drinking Water Act ("SDWA") Section 1431 action ("Emergency Administrative Order").

However, Region 5 did not issue an Emergency Administrative Order, as directed by OECA, until January 21, 2016.

79.   On September 3, 2015, media reports indicated that Dr. Edwards' reports showed that there is an immediate public health crisis at hand. The media reported that the highly corrosive Flint River water was causing lead contamination in Flint homes. The media reported that the corrosion control plan would be implemented in January, 2016.

80.   On September 9, 2015, Jessica Dupnack (Dupnack) of ABC Channel 12 asked the EPA if "there is any warning to citizens about drinking the water?" Peter Cassell (Cassell), Press Officer of the EPA, misleadingly responded that the "lead monitoring shows Flint has not exceeded the lead action level" and that "Flint recently accepted EPA's offer to provide technical assistance to the City and MDEQ . . . ."

81.   Later that day, Dupnack asked Cassell to comment on the disparity between Flint's position (that the City was in compliance) and Dr. Edwards' position (that the City testing was invalid and did not establish compliance). She asked if the EPA's position was that "every single home falls below 15 ppb?" Cassell evaded the question by responding "I'm not sure how the sampling differs between the City of Flint and Virginia Tech and can't comment on that, specifically."

82.    On September 9, 2015, Congressman Dan Kildee wrote to the EPA, inquiring: (a) whether the findings in the Del Toral Report were accurate; (b) whether there was a public health emergency; (c) when would the EPA inform citizens of any public health concerns; and (d) whether Flint's water was safe?

83.    On September 15, 2015, Susan Hedman provided a vague response to Congressman Kildee's correspondence. Hedman did not address any of the issues that Kildee had raised regarding the accuracy of the Del Toral report.

84.    On September 11, 2015, Crooks wrote to MDEQ representatives and stated: "Just to clarify; on our call, I wanted to remind you that Miguel's report had DEQ cc'd. So if the Legislature or whoever might say you all were cc'd, you can truthfully respond that it was EPA's request that the report not be sent to the ccs. Consequently, you all never received the report from Miguel." Crooks was fully aware that the MDEQ representatives had received the report, not from the EPA but rather from the public media when Guyette published his story about the Del Toral report.

85.    In a September 14, 2015 email, Debbie Baltazar, Water Division Branch Chief for EPA Region 5, stated that "perhaps [Hedman] already knows all of this, but I am not sure Flint is the community we want to go out on limb for."

86.     On September 18, 2015, Tinka Hyde, Director of the EPA Region 5 Water Division, made a formal request for EPA experts Lytle and Schock to be assigned to Flint to provide technical assistance.

87.     On September 20, 2015, Dr. Edwards sent an email to Lytle and Schock and other EPA officials. In this email, Dr. Edwards made a strong case that the Flint/MDEQ prior sampling should be rejected as non-compliant with basic testing protocol. He completed his communication by pointing out emphatically that:

"1)     FLINT HAS LOTS OF LEAD PIPE, NO CORROSION CONTROL TREATMENT, AND HAS NO LEGITIMATE LCR TESTING FOR AT LEAST A YEAR.

2)      AMONGST LOW INCOME INFANTS, BREAST FEEDING RATES ARE LOWER, AND FORMULA USE IS HIGHER. MANY FLINT RESIDENTS CANNOT AFFORD TO FLUSH DUE TO HIGH WATER RATES, THEY CANNOT AFFORD BOTTLED WATER. THIS IS AN UNPRECEDENTED SITUATION AND EPA NEEDS TO TAKE THIS SERIOUSLY, NOW.

3)      WE HAVE ONE CHILD WITH ELEVATED BLOOD LEAD ALREADY....IN FACT, THAT IS THE ONLY REASON WE KNOW ABOUT ANY OF THE ABOVE.

4)      MDEQ IS STILL PUBLICLY INSISTING FLINT WATER HAS TESTED SAFE, IS SAFE, AND THAT FLINT HAS **NO VIOLATIONS** OF ANY SORT." (Emphasis in text)

88.     Dr. Edwards continued: "I believe that someone at HQ or in R5 should immediately take decisive action on this issue to protect the public."

89.    On September 21, 2015, Dr. Edwards published on his website the following advice to Flint water users: "Drink or cook with the water only if a proper filter is used and flushing for 5 minutes before the water is used for drinking or cooking."

90.    Dr. Edwards also shared this advice with the EPA, which responded by stating that it was "looking into the information you have provided." Elected officials met with EPA and MDEQ representatives to review the situation and options.

91.    On September 21, 2015, Dr. Mona Hanna-Attisha presented her study of elevated blood lead levels for children in Flint to Walling, Natasha Henderson, Flint City Administrator, and Howard Croft, Flint Director of Public works.

92.    In her report, Dr. Hanna-Attisha documented increases which coincided with exposure to the Flint River water. Dr. Edwards shared this information with the EPA.

93.    Dr. Edwards also informed the EPA that, as reported by Dr. Hanna-Attisha, the EPA had given the City of Flint a "blessing that they were in compliance and there was no corrosivity" issue. Dr. Hanna-Attisha pushed for a health advisory to be published to the citizens of Flint.

94.    On September 22, 2015, Dr. Edwards wrote an email to the EPA stating:

> "MDEQ will go to their graves insisting Flint has met all Federal LCR standards . . . higher numbers of EBL kids be damned. They are also

telling people that EPA has said that there is no absolutely no corrosion problem in Flint water."

95.    On September 24, 2015, Dr. Mona Hanna-Attisha held a press conference to release her study and recommendations. Her position: every child in Flint is presumed to have ingested and been harmed by the lead in Flint's water.

96.    On September 25, 2015, the City of Flint issued a lead advisory, which stated in part:

> The City of Flint is issuing a lead advisory for residents to be aware of lead levels in drinking water after hearing concerns from the medical community. While the City is in full compliance with the Federal Safe Drinking Water Act, this information is being shared as part of a public awareness campaign to ensure that everyone takes note that no level of lead is considered safe.

97.    On September 27, 2015, Hedman called MDEQ Director Dan Wyant to discuss the need for expedited implementation of corrosion control treatment.

98.    On October 1, 2015, the Genesee County Health Department issued a "Do Not Drink the Water" Advisory.

99.    The Natural Resources Defense Council thereafter filed, on behalf of Dr. Edwards, Coalition for Clean Water, and Concerned Pastors for Social Action and other interested groups and individuals, a Petition for Emergency Action against the EPA to force the EPA to take action to abate the imminent and substantial endangerment to the health of Flint residents.

100.   On October 8, 2015, the Governor announced that he had ordered the restoration of DWSD water to the Flint water system.

101.   On November 4, 2015, the Del Toral Report was finalized. The report noted that officials were implementing many of the recommendations contained in the Interim Report (Flint was switched back to Detroit water, filters were provided to residents and additional corrosion control was to be implemented).

102.   On January 16, 2016, the Governor declared a state of emergency.

103.   On January 21, 2016, the EPA issued an Emergency Administrative Order pursuant to Section 1431 of the Safe Drinking Water Act, 42 U.S.C.§ 300i, stating in part:

> "The presence of lead in the City water is principally due to lack of corrosion control treatment after the City's switch to the Flint River as a source in April 2014. The river's water was corrosive and removed protective coating in the system. This allowed lead to leach into the drinking water, which can continue until the system's treatment is optimized. . . . .
>
> The City, MDEQ and the State have failed to take adequate measures to protect public health . . . there continue to be delays in responding to critical EPA recommendations . . . the EPA remains concerned that the City lacks the professional expertise and resources needed to carry out the recommended actions and to safely manage the City's PWS."

104.   On March 17, 2016, EPA Administrator McCarthy testified before Congress. Appearing before House Oversight and Government Reform Committee, McCarthy admitted that the EPA tried but could not achieve corrosion control in a

timely manner. When asked by Chairman Representative Jason Chaffetz, "when did you know they [MDEQ] didn't do [corrosion control]?" McCarthy replied that

> [W]e [EPA] knew on July 21st of a systemic problem. The state [MDEQ] agreed the next day and then all they did was slow walk [corrosion control]. That's why we had to do it the way we did. I wished we had gone further. I wish we had gone farther. I wished we had yelled from the tree tops but there is no way that my agency created this problem or there was ambiguity in the law that wouldn't have done the same that the governor said. Don't put people at risk just because we couldn't figure out in the life of us, in our guidance, we never thought anybody goes from a treated system to an untreated system and not treat it [with corrosion control]. I didn't think we ever had to say that because I never thought anyone would. That's where we are today.

105.    On October 20, 2016, the OIG report was issued. It stated, in part, that

> "*EPA Region 5 had the authority and sufficient information to issue a SDWA Section 1431 emergency order to protect Flint residents from lead- contaminated water as early as June 2015. Region 5 had information that systems designed to protect Flint drinking water from lead contamination were not in place, residents had reported multiple abnormalities in the water, and test results from some homes showed lead levels above the federal action level.*

> EPA Region 5 did not issue an emergency order because the region concluded the state's actions were a jurisdictional bar preventing the EPA from issuing a SDWA Section 1431 emergency order. However, the EPA's 1991 guidance on SDWA Section 1431 orders states that if state actions are deemed insufficient, the EPA can and should proceed with a SDWA Section 1431 order, and the EPA may use its emergency authority if state action is not protecting the public in a timely manner. However, EPA Region 5 did not intervene under SDWA Section 1431, the conditions in Flint persisted, and the state continued to delay taking action to require corrosion control or provide alternative drinking water supplies."

OIG Report, "At a Glance"

# COUNT I

## Negligence: Failure to take mandatory actions required by SWDA

106.   The United States is liable, respecting the provisions of the FTCA, *in the same manner and to the same extent as a private individual under like circumstances*. 28 U.S.C. § 2674.

107.   All of the events which give rise to this cause of action occurred in the state of Michigan.

108.   The EPA is liable for the knowledge of and acts and omissions of its agents and employees, including but not limited to, Jennifer Crooks and Dr. Susan Hedman.

109.   This case involves a major failure of all levels of government to protect the health and safety of the public. Local, state and federal agencies and employees, working individually and at times in concert with each other, mismanaged this environmental catastrophe.

110.   The Michigan Supreme Court has recognized that a "private individual" is subject to the tort duties established by Section 324A of the Restatement of Torts, 2d. *See Smith v. Allendale Mut. Ins. Co*., 410 Mich. 685,705; 303 N.W.2d 702, 1981 Mich. LEXIS 251 (Mich. 1981) and more recently *Fultz v. Union-Commerce Assocs.*, 470 Mich. 460,464; 683 N.W.2d 587, 2004 Mich.

LEXIS 1523 (Mich. 2004) (noting that "Michigan courts have accepted the Restatement of Torts, 2d, § 324A, as an accurate statement of Michigan law and used the principles stated above in analyzing plaintiffs' claims in the past").

111.   The Restatement of Torts, 2d, § 324A, provides that:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>   (a)     his failure to exercise reasonable care increases the risk of such harm, or
>   (b)     he has undertaken to perform a duty owed by the other to the third person, or
>   (c)     the harm is suffered because of reliance of the other or the third person upon the undertaking.

112.   The EPA undertook the duty of rendering services to the MDEQ "for the protection" of the Flint water users.

**A.     Failure to Issue § 1431 Emergency Order**

113.   Upon learning that a contaminant which is present or likely to enter a water system may present a substantial and imminent danger to the health of persons and that the actions of state and local authorities have not been sufficient, the EPA was required to issue a § 1431 emergency order.

114.   An order issued pursuant to §1431 can require state and local officials to take actions to protect the public, including providing alternative water supplies at no cost to the consumer as well notifying the public of the hazard.

115.   Despite learning as early as October 2014 that Flint water users were being exposed to a substantial and imminent danger due to a contaminant in the water system, which the Michigan and Flint officials had failed to take sufficient actions to remedy, the EPA failed to fulfill its mandatory duty to issue a § 1431 emergency order.

116.   This failure persisted until January 2016.

**B.   Failure to Provide Technical Assistance, Obtain Compliance and Commence Civil Action Under § 1414**

117.   Pursuant to § 1414 of the SWDA, when the EPA learns that a state or local water provider has not complied with the requirements for safe drinking water, the EPA must provide expert advice and technical assistance. If compliance is not obtained within 30 days, the EPA must issue an order requiring the public water system to comply or commence a civil action.

118.   The EPA had notice that the Flint water system was not in compliance with the requirements of the SWDA as early as October 2014.

119.   Despite notice of non-compliance in October 2014, the EPA did not provide advice and technical assistance until September 2015 and never issued an order or commenced a civil action to require the State of Michigan or the City of Flint to bring the Flint water system in compliance with the requirements of the SWDA as required by § 1414.

### C.   Negligent Undertaking Regarding Corrosion Control

120.   In February 2015, the EPA rendered service to the MDEQ and responded to LeeAnne Walters' complaints about being exposed to contaminated Flint River water.

121.   Upon undertaking this task, the EPA owed a duty of reasonable care to prevent or reduce the risk of harm to the residents of Flint, including claimants.

122.   The facts recited above establish that the EPA was an active participant in the mismanagement of the unfolding environmental disaster in Flint.

123.   Crooks was aware that the Flint River was highly corrosive and that Flint had older, corroded lead service pipes, which required corrosion control treatment.

124.   By February 2015, Crooks knew that Del Toral had observed lead based "black sediment" in the Walters water and that Burgess had reported floating particles in her own water.

125.   By February 2015, Crooks was aware that a Flint Tech Advisory Board member's relative was experiencing skin rashes and hair loss due to exposure to Flint water.

126.   In February 2015, Del Toral informed Crooks that the absence of corrosion control treatment would explain the presence of lead particles in the water.

127.   Based on the information provided by Del Toral and Burgess, Crooks knew or should have known that corrosion control was essential for safe distribution of the Flint River water and was likely absent from the treatment of the water.

128.   By April 25, 2015, the EPA knew to a certainty that corrosion control was not being used, yet the EPA failed to suggest, direct or counsel the MDEQ and Flint to implement a corrosion control program until July 2015.

129.   By April 2015, the EPA knew that the MDEQ either refused or was incapable of managing the technical aspects of water treatment necessary to achieve compliance with all environmental laws.

130.   Even after the EPA directed the MDEQ and Flint to implement corrosion control in July 2015, the EPA knew that the MDEQ and Flint "slow walked" the process, as Administrator McCarthy testified on March 17, 2016.

131.   As early as October 2014, EPA Region 5 had authority and sufficient information to require the issuance of a SDWA Section 1431 emergency order to protect Flint residents from lead contaminated water.

132.   EPA Region 5 had information that systems designed to protect Flint drinking water from lead contamination were not in place, including multiple reports by residents of abnormalities in the water, as well as test results from a number of homes showing lead levels above the federal action level.

133.   EPA Region 5 did not brief OECA about Flint's water crisis until September 2015.

134.   OECA immediately advised the region take SDWA Section 1431 action. During the autumn of 2015, the state began to take actions to correct the problems in Flint. EPA Region 5 maintained that the state was acting, but the contamination persisted.

135.   On January 21, 2016, the EPA Administrator finally directed OECA to issue an emergency order. The emergency order stated the EPA had determined that Flint's and Michigan's responses to the drinking water crisis were inadequate, and the EPA ordered specific actions to address the public health threat.

136.   The EPA's failure to comply with its duties under both § 1414 and §1431 of the SWDA, to issue a section 1431 emergency order, to provide advice and technical assistance to obtain compliance with the requirements of the SWDA and to issue an order or commence an action against state and local officials to obtain compliance, including requiring immediate corrosion control treatment, was unreasonable and unquestionably increased the risk and level of harm to claimants. *See* Restatement of Torts, 2d § 324A (a).

137.   The EPA, in rendering services to the MDEQ, undertook a duty owed by the MDEQ to claimants. *See* Restatement of Torts, 2d § 324A (b).

138.   The EPA breached this duty to claimants by unreasonably delaying in ordering Flint to promptly implement corrosion control and by failing to promptly notify Flint water users of the contamination of their water supply and the hazards posed by that contamination.

## COUNT II

### Negligent Performance of Undertaking Regarding Timely Investigations

139.   Residents of Flint, including Burgess and Walters, submitted to the EPA complaints and notices of violations in connection with their exposure to poor quality water caused by the distribution of the highly corrosive Flint River water.

140.   The EPA undertook an obligation to timely investigate complaints. In so doing, it undertook a duty to investigate the complaints in a careful and reasonable manner, and to pursue a prompt and proper remedy upon detection of any violations of law or regulation.

141.   Residents of Flint relied on the EPA to undertake the task of investigating complaints and fashioning the appropriate remedy. *See* Restatement of Torts, 2d § 324A (c).

142.   If the investigation had been undertaken in a timely fashion, a violation of environmental law would have been detected and City of Flint would have been required to implement corrosion control treatment or to develop another remedy to prevent harm to claimants.

## COUNT III

### Negligent Undertaking of the Duty to Warn the Public of Environmental Risks to Public Health

143.   The EPA, in employing environmental safety experts such as Del Toral, undertook the task of providing the MDEQ with technical advice regarding environmental safety and expertise regarding the consequences of using the Flint River as a primary drinking water source.

144.   On June 24 and 25, 2015, Del Toral advised the EPA that the public's exposure to lead was "widespread" and that the environmental catastrophe facing Flint should not be concealed and the citizens should be warned of the public health and safety risks.

145.   Yet the EPA concealed these environmental dangers and risks from the public. The EPA's failure to immediately warn the public of such a public health emergency bordered on "criminal neglect."

146.   Notwithstanding expert advice regarding implementation of a harm mitigation plan, the EPA remained silent when it should have spoken out. In so doing, it knowingly permitted and facilitated the MDEQ and City of Flint's concealment of the environmental disaster identified by Del Toral. *See* Restatement of Torts, 2d § 324A (b).

147.   The EPA's failure to warn claimants and the citizens of Flint of the environmental disaster and ensuing cover-up significantly increased the harm to

the Citizens of Flint for which the EPA is responsible. *See* Restatement of Torts, 2d § 324A (a).

## DAMAGES

148.   As a result of the EPA's negligence, Plaintiffs have experienced and will continue to experience physical injury, illness, lead poisoning, out of pocket economic losses, pain and suffering, emotional distress, and deprivation of a quality of life.

149.   Plaintiffs' aggregate damages for personal injuries and losses are $1,456,000,000.00

150.   Accordingly, Plaintiffs demand judgment for themselves in the amount of $1,456,000,000.00 or whatever amount in excess of that amount the Court deems appropriate.

Dated: November 13, 2019

**LEVY KONIGSBERG, LLP**


By:   */s/ Corey M. Stern*
Corey M. Stern, Esq.
Renner K. Walker
800 Third Avenue, 11th Floor
New York, NY 10022
Phone: (212) 605-6200
Fax: (212) 605-629
cstern@levylaw.com