# ATTACHMENT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTERS, et al.                                Civil Case No. 5:17-cv-10164

     Plaintiffs,                               Honorable Judith E. Levy

v.

THE CITY OF FLINT, et al

     Defendants

---

This filing relates to:

MEEKS, et al.                                  Civil Case No. 5:19-cv-13359

     Plaintiffs,                               Honorable Judith E. Levy

v.

UNITED STATES OF AMERICA

     Defendant.

---

This filing relates to:

In re FTCA Flint Water Cases                    Civil Case No. 4:17-cv-11218
                                               (Consolidated)


                                               Honorable Linda V. Parker

---

**United States of America's Opposition to Motion to Consolidate**

## ISSUE PRESENTED

1. Whether to consolidate *Meeks v. United States*, 19-13359, and the *In re FTCA Flint Water Cases*, 17-11218, with *Walters v. City of Flint*, 17-CV-10164 pursuant to Federal Rule of Civil Procedure 42(a)?

## CONTROLLING OR MOST APPRORIATE AUTHORITY

**Cases**

*Cantrell v. GAF Corp.*, 999 F.2d 1007 (6th Cir. 1993)

*Banacki v. OneWest Bank, FSB*, 276 F.R.D. 567 (E.D. Mich. 2011)

*Conceivex, Inc. v. Rinovum Women's Health, Inc.*, 2017 WL 3484499 (E.D. Mich. Aug. 15, 2017) (Levy, J.)

**Statutes**

Mich. Comp. Laws § 600.2957

**Rules**

Federal Rule of Civil Procedure 42(a)

Eastern District of Michigan Local Rule 42.1

## TABLE OF CONTENTS

ISSUE PRESENTED ……………………………………………………….. ii

CONTROLLING OR MOST APPRORIATE AUTHORITY ................................ iii

INDEX OF EXHIBITS ................................................................................v

INTRODUCTION ..................................................................................1

FACTS ................................................................................................2

    I. The *In Re FTCA Flint Water Cases*……………………………...………2

    II. *Meeks v. United States*………………………………………………...4

    III. The *In re FTCA Flint Water Cases*……………………………………….5

        A. Non-Party Discovery of the United States…………………………..5

        B. First Bellwether Trial Scheduled for October 2020……………………6

LEGAL STANDARD..................................................................................7

ARGUMENT ...........................................................................................8

    I. Common Issues of Law or Fact Do Not Predominate……………….….. 8

    II. The Court Should Not Exercise Its Discretion to Consolidate……………13

        A. Plaintiffs' Two-Year Delay………………………………………… 14

        B. The Non-FTCA and FTCA Cases Are in Different
Stages of Litigation .................................................................................14

        C. Consolidation Would Have Minimal Effect on Judicial Economy…..15

        D. The United States Will Suffer Insurmountable Prejudice
and Unfair Disadvantages from Consolidation for Trial…………….……………..18

        E. Plaintiffs' Purported Prejudices Are Non-Existent or Minimal……….20

    III. Staying *Meeks* Is a More Appropriate Remedy ………………………..22

CONCLUSION ........................................................................................23

## INDEX OF EXHIBITS

A. Proposed Stipulated Discovery Coordination Protocol, *In re FTCA Flint Water Cases*, 17-cv-11218.


B. Proposed Case Management Order No. 3, *In re FTCA Flint Water Cases*, 17-cv-11218.

## INTRODUCTION

For nearly three years, federal tort cases related to the Flint Water Crisis have proceeded on two parallel tracks, with the Federal Tort Claims Act ("FTCA") cases solely against the United States proceeding before Judge Parker ("FTCA Cases") and the remaining cases proceeding before this Court, including the *Walters* case ("Non-FTCA Cases"). The *Walters* plaintiffs ("Plaintiffs") now seek to disrupt this status quo and consolidate all the FTCA and Non-FTCA Cases because—after two years of waiting—some of them decided to assert their FTCA claims by filing a new lawsuit, *Meeks v. United States*, 19-cv-13359, in November 2019.

Although *Meeks* should be consolidated with the other FTCA Cases pending before Judge Parker,[1] the FTCA and Non-FTCA Cases should not be consolidated. For one, common issues of law or fact do not predominate between the FTCA and Non-FTCA Cases. The FTCA Cases involve unique factual and legal issues regarding the United States' sovereign immunity that are absent from the Non-FTCA Cases, such as: (1) the FTCA's discretionary function exception; (2) the FTCA's two-year statute of limitations; and (3) the United States' analogous private liability under Michigan's Good Samaritan doctrine.

---

[1] *See* Notice of Motion to Consolidate, *Meeks v. United States*, 19-cv-13359, ECF No. 10.

1

The factors guiding this Court's decision whether to consolidate also weigh against consolidation, including:  (1) Plaintiffs' two-year delay in filing *Meeks*; (2) the FTCA and Non-FTCA Cases are in different stages of litigation; (3) consolidation would have little effect on judicial economy beyond what has been achieved under discovery coordination orders; (4) consolidation would impose insurmountable prejudice and unfair disadvantages on the United States; and (5) Plaintiffs overstate the effects of litigating the FTCA and Non-FTCA Cases separately.

## FACTS

Between March 2017 and May 2017, the *Meeks* Plaintiffs filed FTCA administrative claims with the U.S. Environmental Protection Agency ("EPA"), alleging that EPA negligently handled the Flint Water Crisis. *See* Compl. at ¶8, *Meeks v. United States*, 19-13359, ECF No. 1. All the *Meeks* Plaintiffs then could have filed their FTCA suit six months later at the end of November 2017. 28 U.S.C. § 2675(a). Instead, they elected to wait two years until November 2019, at which point their FTCA complaint was randomly assigned to this Court.

## I.    The *In re FTCA Flint Water Cases*

While the *Meeks* Plaintiffs waited, much occurred in the FTCA Cases. First, six identical FTCA complaints filed on behalf of over 8,000 plaintiffs were consolidated before Judge Parker. Case Management Order No. 2, *In re FTCA*

2

*Flint Water Cases*, 17-11218, ECF No. 91 ("CMO 2") ("[T]he actions arise from the same conduct by EPA officials and employees, are asserted under the same federal statute, and involve similar damages. Consolidation will aid in the efficient resolution of these lawsuits and avoid repetition and confusion.").

Second, Judge Parker presided over jurisdictional discovery that served as the predicate for the United States' factual motions to dismiss for lack of subject matter jurisdiction in the FTCA Cases. *See* Case Management Order No. 1, *Burgess*, 17-11218, ECF No. 23; Memorandum in Support of Motion to Dismiss, *Burgess*, 17-11218, ECF No. 37, and *Thomas*, 18-10243, ECF No. 14.

Third, Judge Parker resolved these motions to dismiss, including considering two rounds of supplemental briefing and a motion for interlocutory appeal. *See Burgess v. United States*, 375 F. Supp. 3d 796 (E.D. Mich. 2019); *Burgess v. United States*, 2019 WL 4734686 (E.D. Mich. Sept. 27, 2019).

Fourth, after a November 15, 2019 status conference in which all counsel of record for the *In re FTCA Flint Water Cases* plaintiffs and the United States agreed to consolidation, Judge Parker issued CMO 2 that: (1) consolidated the six FTCA cases into the *In re FTCA Flint Water Cases*; (2) ordered the parties to submit a stipulated Discovery Coordination Protocol detailing how discovery in the *In re FTCA Flint Water Cases* would be coordinated with the Flint cases pending before this Court and elsewhere; and (3) ordered the parties to submit proposals for a

bellwether plaintiff and merits discovery process. CMO 2 at 2–3. On January 15, 2020, the parties submitted a stipulated Discovery Coordination Protocol and proposed Case Management Order No. 3 ("Proposed CMO 3") for Judge Parker's consideration. *See* Exhs. A & B.

## II.    *Meeks v. United States*

Two days before Judge Parker's November 2019 status conference, Plaintiffs finally filed the *Meeks* complaint, asserting FTCA claims on behalf of 1,078 plaintiffs—compared to over 8,000 plaintiffs in the *In re FTCA Flint Water Cases*—and copying the existing *In re FTCA Flint Water Cases* complaints, including: (1) asserting the exact same legal causes of action; (2) containing the same factual allegations regarding the Flint Water Crisis and the United States' alleged conduct (in many cases, the *Meeks* complaint copies verbatim the allegations in the *In re FTCA Flint Water Cases* complaints); and (3) naming only the United States as a defendant.[2]

Plaintiffs' counsel then attended Judge Parker's November 15, 2019 status conference for the *In re FTCA Flint Water Cases* and was silent when Judge Parker asked if anyone in attendance objected to Judge Parker consolidating the six

---

[2] *Compare* Compl., *Meeks v. United States*, 19-13359, ECF No. 1, *with* Second Am. Compl., *Burgess v. United States*, 17-11218, ECF No. 73, Compl., *Thomas v. United States*, 18-10243, ECF No. 1, Compl., *Adams v. United States*, 18-13166, ECF No. 1, Compl., *Abraham v. United States*, 19-10625, ECF No. 1, *and* Compl., *Berry v. United States*, 19-cv-12766, ECF No. 1.

FTCA cases before her. This silence continued until Judge Parker's February 4, 2020 telephonic status conference regarding the United States' motion to consolidate *Meeks* with the other FTCA Cases, *see* Notice of Motion to Consolidate, *Meeks v. United States*, 19-cv-13359, ECF No. 10, at which point Plaintiffs' counsel informed Judge Parker and the United States that it planned to move to consolidate all the FTCA Cases before this Court.

### III.    The *In re Flint Water Cases*

#### A. Non-Party Discovery of the United States

Even before the stipulated Discovery Coordination Protocol was submitted to Judge Parker, the United States has been cooperating with the parties in the Non-FTCA Cases. In June 2018, these parties issued the United States a third-party subpoena. The United States provided responsive information in: (1) a September 2018 letter; (2) a November 2018 in-person meeting attended by counsel for the United States and the parties in the *In re Flint Water Cases*, including Plaintiffs' counsel; (3) a November 2018 letter; and (4) a December 2018 letter.

In addition, in January 2020, the Veolia defendants in the Non-FTCA Cases noticed ten current or former United States employees for depositions. Counsel for the United States then conferred with counsel for Veolia and the plaintiffs in the *In re FTCA Flint Water Cases*. Plaintiffs' counsel has been invited to these teleconferences and included in the related email exchanges, but has refused to

participate. On February 6, 2020, counsel for the United States, Veolia, and the plaintiffs in the *In re FTCA Flint Water Cases* reached agreement on the process for these depositions consistent with both this Court's Discovery Coordination and Deposition Protocols, *see* Second Am. Case Management Order, *In re Flint Water Cases*, ECF 998 ("SACMO"), and the stipulated Discovery Coordination Protocol submitted to Judge Parker. Eight of the depositions have been scheduled.

### B. First Bellwether Trial Scheduled for October 2020

As this Court is well aware, the parties in the *In re Flint Water Cases* have been engaged since May 2019 in the following bellwether and discovery process for the individual cases and will try the first bellwether trial in October 2020:

(1) Random selection of 150 plaintiffs "whose dates of birth are between April 25, 2008, and April 25, 2014, and who only claim lead-induced injuries." SACMO § X(A)(2) & (3).

(2) These 150 plaintiffs then provided "fact sheets, together with authorizations for release of records specified in the fact sheets and any documents specified in the fact sheets . . . ." *Id.* § X(A)(4).

(3) Based on this information, counsel for plaintiffs and defendants then each selected fifty plaintiffs—for a total of 100—who were subject to written discovery. *Id.* § X(B)(1) – (5).

(4) Based on this additional information, counsel for plaintiffs and defendants

6

then each selected thirty plaintiffs—for a total of sixty—for depositions and inspections of their property. *Id.* § X(C)(1) – (4).

(5) Within six months of selecting these sixty plaintiffs, plaintiffs' Federal Rule of Civil Procedure ("Rule") 26(a)(2) expert reports are due. *Id.* § X(D)(1).

(6) Defendants then may begin noticing plaintiffs for Rule 35 examinations, deposing plaintiffs' experts, and disclosing their own experts. *Id.* § X(D)(2) – (4).

The United States has not been involved in this bellwether and discovery process, but it appears that the parties in the *In re Flint Water Cases* are at least at step (4) above. *See* Memo. In Support of Mot. to Consolidate at 9–10, *Walters v. City of Flint*, 17-cv-10164, ECF No. 283-1 ("Pls.' Memo"). The parties in the *In re Flint Water Cases* also are developing a second bellwether pool process. *See* Order Regarding Matters Discussed at the January 22, 2020 Status Conference at § IV, *In re Flint Water Cases*, 16-cv-10444, ECF No. 1048.

## LEGAL STANDARD

Rule 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions[.]" "[C]onsolidation is not justified or required simply because the actions *include* a common question of fact or law." *Banacki v. OneWest Bank, FSB*, 276 F.R.D. 567, 572 (E.D. Mich. 2011) ("When . . . individual issues predominate, consolidation should be denied"). "The party moving for consolidation bears the burden of

7

demonstrating the commonality of law, facts or both . . . and the court must

examine 'the special underlying facts' with 'close attention' before ordering a

consolidation." *Id.* at 571.

"Whether cases involving the same factual and legal questions should be

consolidated for trial is a matter within the discretion of the trial court" based on:

> [W]hether the specific risks of prejudice and possible confusion [are]
> overborne by the risk of inconsistent adjudications of common factual
> and legal issues, the burden on parties, witnesses and available judicial
> resources posed by multiple lawsuits, the length of time required to
> conclude multiple suits as against a single one, and the relative expense
> to all concerned of the single-trial, multiple-trial alternatives.

*Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993) (quoting *Hendrix v.*

*Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)). "'Care must be

taken that consolidation does not result in unavoidable prejudice or unfair

advantage,' and where conservation of judicial resources would be 'slight, the risk

of prejudice to a party must be viewed with even greater scrutiny.'" *Conceivex,*

*Inc. v. Rinovum Women's Health, Inc.*, 2017 WL 3484499, at *2 (E.D. Mich. Aug.

15, 2017) (Levy, J.) (quoting *Cantrell*, 999 F.2d at 1011).

**ARGUMENT**

**I.    Common Issues of Law or Fact Do Not Predominate**

In this case, "common questions of law or fact do not predominate and do

not justify consolidation." *Conceivex*, 2017 WL 3484499, at *6 (Levy, J.)

8

First, the United States is not a defendant in the Non-FTCA Cases. *See, e.g.*, *id.* (common issues did not predominate in part because "the cases no longer involve all of the same defendants"); *see also In re Auto. Parts Antitrust Litig.*, 2016 WL 8200512, at *2 (E.D. Mich. Apr. 13, 2016) ("the existence of different Defendants weighs against consolidation"). Consolidation would not alter this fact. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 412–13 (6th Cir. 1998) ("consolidation . . . does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another") (citation omitted).

Second, "[w]hile it is true that each claim [in the FTCA and Non-FTCA Cases] is similar in that they all involve [the Flint Water Crisis], each claim arises from largely individual facts and entirely different questions of law." *Conceivex*, 2017 WL 3484499, at *6 (Levy, J.). A central issue percolating throughout the FTCA Cases—and absent from the Non-FTCA Cases—is the scope of the United States' sovereign immunity. *See Burgess*, 375 F. Supp. 3d at 809–11 & 817. The FTCA's waiver of sovereign immunity is subject to "a number of . . . exceptions" that the parties in the FTCA Cases will continue to litigate, including the FTCA's discretionary function exception that analyzes:  (1) whether the U.S. Environmental Protection Agency ("EPA") "had discretion in exercising the

9

challenged act or omission;" and (2) whether the challenged conduct is susceptible to policy analysis. *Id.* at 809 & 812–17.[3]

In addition, the FTCA has a unique two-year statute of limitations, 28 U.S.C. § 2401(b), that was the subject of extensive discussions during Judge Parker's November 15, 2019 status conference and, as a result, Judge Parker has "urge[d] the parties to consider a protocol to identify and resolve claims for which there are statute of limitations concerns," CMO 2 at 3. These concerns—and their related factual and legal issues—will have a profound impact on the FTCA Cases, as over 2,600 of the over 8,000 plaintiffs (approximately 28%) in the FTCA Cases submitted their FTCA administrative claims more than two years after EPA issued its Safe Drinking Water Act Section 1431 order in January 2016.

Another unique aspect of the FTCA Cases is that virtually all the causes of action, including all the *Meeks* plaintiffs' claims, arise under Michigan's Good Samaritan doctrine. This doctrine requires the Court to assess, among other things, the nature of EPA's interactions with each of the FTCA plaintiffs to determine whether each plaintiff actually, "justifiabl[y, and,] detrimental[ly] reli[ed] on the

---

[3] Although Judge Parker's decision in *Burgess*, 375 F. Supp. 3d 796, addressed this and other FTCA issues, these issues will arise again in the FTCA Cases as discovery proceeds. *See Burgess*, 2019 WL 4734686, at *1 ("The Court's holdings with respect to the government's motion to dismiss was too fact-intensive an inquiry for interlocutory review. . . . *at this stage of the proceedings, the facts remain to be developed and future discovery may impact the Court's analysis*.") (emphasis added).

10

EPA's representations" before concluding that the United States owed a duty of care. *Burgess*, 375 F. Supp. 3d at 817–18.

Not only are none of these FTCA-specific factual and legal issues at issue in the Non-FTCA Cases, but the Non-FTCA Cases also involve factual and legal issues absent from the FTCA Cases, including: (1) class certification; (2) requests for injunctive relief; (3) claims relating to the right of bodily integrity protected under the Due Process Clause of the Fourteenth Amendment; and (4) the prospect of punitive damages. Given these substantial differences, the Court should conclude that "common questions of law or fact do not predominate and do not justify consolidation" of the FTCA and Non-FTCA Cases. *Conceivex*, 2017 WL 3484499, at *6; *see also Banacki*, 276 F.R.D. at 572 (denying a motion to consolidate and concluding that common issues did not predominate where "the claims asserted in each of the putative class actions are distinct and, as a result, will require the presentation of different evidence"); *Hemlock Semicondutor Corp. v. Kyocera Corp.*, 2015 WL 13049897, at *2 (E.D. Mich. Oct. 9, 2015) (denying a motion to consolidate in part because "[t]he cases are also legally distinct;" the defendants in the cases "rely on different defense theories" and one "raises a number of defenses [the other] has not raised").[4]

---

[4] *See also Weir-Cove Moving & Storage Co. v. Fleet Owners Ins. Fund*, 2019 WL 266422, at *3 (N.D. Ohio Jan. 18, 2019) (denying motion to consolidate where, "[w]hile the factual impetus for both actions may be the same," "divergent legal

Plaintiffs posit that common issues predominate because the United States'
percentage of fault will be an issue in the Non-FTCA Cases, Pls.' Memo at 9–10,
but this is a far cry from what would be required if the FTCA and Non-FTCA
Cases are consolidated—*i.e.*, this Court[5] adjudicating the scope of the United
States' sovereign immunity.[6] Contrary to Plaintiffs' suggestion, Michigan's several
liability regime does not require that the parties, this Court, or the jury in the Non-
FTCA Cases first wade through and resolve the scope of the United States'
sovereign immunity before the jury allocates a percentage of fault to the United
States in the Non-FTCA Cases. *See* Mich. Comp. Laws ("MCL") § 600.2957(1)
("In assessing percentages of fault under this subsection, the trier of fact shall
consider the fault of each person, *regardless of whether the person is, or could
have been, named as a party to the action*.") (emphasis added); *Sedgwick Ins. v.
F.A.B.E. Custom Downstream Sys., Inc.*, 47 F. Supp. 3d 536, 542 (E.D. Mich.
2014) (fault may be allocated to a non-party employer immune under Michigan's

_____

issues predominate in these cases," including some claims under ERISA and some
"relating to the employment status of . . . employees").

[5] Under the FTCA, the trier of fact is a judge. 28 U.S.C. § 2402.

[6] Issues related to the scope of the FTCA's waiver of sovereign immunity include:
(1) whether the FTCA's discretionary function or any other FTCA exception bars
plaintiffs' claims; (2) whether plaintiffs have established analogous private liability
under Michigan's Good Samaritan doctrine; and (3) whether plaintiffs
administratively exhausted their FTCA claims.

worker compensation law).[7] Indeed, Michigan's several liability statute explicitly states that a finding of fault "do[es] not eliminate or diminish a defense or immunity that currently exists." MCL § 600.2957(3). Simply put, the jury's allocation of fault in the Non-FTCA Cases does not pass judgment on or require litigation regarding the non-party United States' sovereign immunity.

If the FTCA and Non-FTCA Cases are consolidated, however, the scope of the United States' liability under the FTCA—and the multiple factual and legal issues it engenders—would have to be resolved by this Court. *See Weir-Cove Moving & Storage Co. v. Fleet Owners Ins. Fund*, 2019 WL 266422, at *3 (N.D. Ohio Jan. 18, 2019) ("Rather than conserve judicial resources and reduce the burden on the parties, the Court, and (potentially) a jury, consolidation will only complicate these cases by injecting entirely new and unrelated issues into each case.").

In conclusion, the Court should deny Plaintiffs' motion to consolidate because common questions of law or fact do not predominate.

## II.    The Court Should Not Exercise Its Discretion to Consolidate

Even assuming *arguendo* that the Court were to find that common questions predominate, it still should not exercise its discretion to consolidate.

---

[7] *See also Estate of Goodwin by Goodwin v. Nw. Michigan Fair Ass'n*, 923 N.W.2d 894, 909–911 (Mich. Ct. App. 2018) (fault could be allocated to non-parties immune under the parental immunity doctrine).

13

### A. Plaintiffs' Two-Year Delay

Contrary to Plaintiffs' assertion, the FTCA did not prevent them from asserting their FTCA claims "in an earlier complaint in the *Walters* action." Pls.' Memo. at 10. The FTCA generally requires claimants to wait six months after submitting their FTCA claim before filing suit. 28 U.S.C. § 2675(a). Since all the *Meeks* administrative claims were submitted by May 2017 (and some months before that), Plaintiffs could have litigated their FTCA claims by the end of November 2017. In other words, their FTCA claims could have been added to their December 15, 2017 amended complaint in *Walters*. Am. Compl., *Walters*, 17-cv-10164, ECF No. 115.

In *Conceivex*, this Court found that the discretionary factors weighed against consolidation when "plaintiff could have filed one lawsuit or amended its initial complaint to add the [new] claims, but instead chose to file a new lawsuit" six months later. 2017 WL 3484499, at *8. Here, the Court can go farther—Plaintiffs' decision to file a new lawsuit *two years later* weighs against consolidation.

### B. The Non-FTCA and FTCA Cases Are in Different Stages of Litigation

The Court should also refuse to consolidate the FTCA Cases and *Meeks* with *Walters* because the cases "are at completely different stages of litigation." *Hemlock Semicondutor*, 2015 WL 13049897, at *2; *see also De Angelis v. Nat'l Entm't Grp. LLC.*, 2019 WL 1024954, at *5 (S.D. Ohio Mar. 4, 2019) ("Courts

14

routinely decline to consolidate cases that are at 'different stages of litigation'")
(collecting cases). The *Walters* case is scheduled for trial in October 2020 and is in
the middle of intensive merits discovery that began over nine months ago, *see
supra* at 6–7, to which the United States has not been privy. Meanwhile, the *In re
FTCA Flint Water Cases* have not begun bellwether plaintiff selection or merits
discovery and a response to the *Meeks* complaint has not been filed. Indeed, a new
FTCA Case—*Zelley v. United States*, 20-cv-10441—was filed just yesterday.

### C. Consolidation Would Have Minimal Effect on Judicial Economy

Consolidation would not significantly promote judicial economy beyond
what has been accomplished by this Court's Discovery Coordination Protocol and
the similar protocol submitted to Judge Parker. In these protocols, "the parties have
already stipulated to a single deposition for both cases for the[] witnesses" and to a
"document-sharing agreement." *Conceivex*, 2017 WL 3484499, at *7 (such
stipulations weighed against consolidation); *see also Roxane Labs., Inc. v. Abbott
Labs.*, 2013 WL 5217571, at *3 (S.D. Ohio Sept. 16, 2013) ("The Court can . . .
coordinate discovery and minimize the risk and burden of duplicative discovery
even without consolidation.") (collecting cases); SACMO § I(D); Exh. A § II.A.
The parties' recent agreement on the Veolia defendants' depositions notices
(without any Court intervention) demonstrates that these protocols work. *See supra*
at 5–6.

Plaintiffs also overstate the potential benefits to judicial economy from consolidating the FTCA and Non-FTCA Cases. For one, a second jury will not be convened in the FTCA Cases because the FTCA claims must be tried by a judge. Pls.' Memo at 11; 28 U.S.C. § 2402. Consequently, the United States anticipates a more streamlined process for introducing evidence of non-parties' role and fault in the FTCA Cases than might be possible before the jury in the cases before this Court, including the parties in the FTCA Cases potentially stipulating to the admission of documents and deposition excerpts without needing live testimony.[8] This also is not a scenario where consolidation will avoid multiple trials, as the parties in the Non-FTCA Cases currently are developing a second bellwether pool process. *See supra* at 7. At best, consolidation may reduce the total number of trials, but in doing so extend the length and complexity of each. *See Conceivex*, 2017 WL 3484499, at *7 ("One significantly longer trial may not outweigh two shorter trials."). Finally, regardless of whether the cases are consolidated, Plaintiffs' counsel still would have to conduct written and deposition discovery of the United States.

---

[8] Rule 45(c) also eliminates the risk of duplicative live testimony in the FTCA and Non-FTCA Cases for witnesses outside of the State of Michigan, including many employees for the United States and presumably the Veolia and LAN defendants. *See Roundtree v. Chase Bank USA, N.A.*, 2014 WL 2480259, at *2 (W.D. Wash. June 3, 2014) ("Regardless of his status as nonparty witness, party, or party officer, he is more than 100 miles from Seattle and in another state. Therefore, the Federal Rules of Civil Procedure do not authorize this Court to compel his attendance.").

Consolidation also would squander some judicial resources. Judge Parker has presided over the FTCA Cases for nearly three years, including issuing an opinion regarding the United States' motion to dismiss for lack of subject matter jurisdiction that required her to "dig deeply into a substantial factual record" regarding the FTCA Cases' unique legal and factual issues generated after an extended period of jurisdictional discovery and briefing. *Burgess*, 2019 WL 4734686, at *1. Moreover, as Judge Parker has recognized, further discovery and litigation are necessary before the issue of subject matter jurisdiction under the FTCA is finally resolved. *Id.* ("at this stage of the proceedings, the facts remain to be developed and future discovery may impact the Court's analysis."). Judge Parker's familiarity with this substantial record and related FTCA issues would be lost if the FTCA Cases are consolidated before this Court. Furthermore, the notion that Judge Parker would not resolve the FTCA jurisdictional issues at the trial court level and that this Court instead would do so after duplicating Judge Parker's work violates all notions of judicial economy.

In addition, consolidation would require this Court and the parties to expend additional time and resources navigating added confusion and procedural issues. For example, because not all *Walters* plaintiffs have filed FTCA claims (indeed, Ms. Walters herself has not), confusion could result in trials where only some plaintiffs are pursuing claims against the United States. To remedy this concern,

17

the Court could create a separate track for those plaintiffs who asserted FTCA

claims, but then the litigation would begin to look awfully similar to the status quo.

### D. The United States Will Suffer Insurmountable Prejudice and Unfair Disadvantages from Consolidation for Trial

The United States will suffer insurmountable prejudice and unfair

disadvantages if Plaintiffs' motion to consolidate is granted and the United States

is thrown into the October 2020 bellwether trial. *Cantrell*, 999 F.2d at 1011 ("Care

must be taken that consolidation does not result in unavoidable prejudice or unfair

advantage."). These prejudices "must be viewed with even greater scrutiny" in this

case because consolidation's "savings to the judicial system are slight." *Id.*

First, the United States had no input into the bellwether process, including

whether the process will "produce reliable information about [the FTCA Cases]."

Manual Complex Lit. § 22.315 (4th ed.). In comparison, the United States and the

plaintiffs in the *In re FTCA Flint Water Cases* have agreed to a bellwether process

that includes seven different categories designed to evaluate both the different

claims asserted in the FTCA Cases and—per Judge Parker's instruction, CMO 2 at

3—FTCA claims with statute of limitations concerns. Proposed CMO 3 at § III.

Second, the United States would be the only party who had no opportunity

or ability to select which plaintiffs proceeded through the bellwether process. *See*

*supra* at 6–7 (counsel for plaintiffs and defendants selected bellwether plaintiffs).

Third, the United States' time to prepare for trial would be less than half the time provided to all the other parties. *See Tech. Sales Assocs., Inc. v. Ohio Star Forge Co.*, 2008 WL 4791885, at *2 (E.D. Mich. Oct. 29, 2008) ("Consolidation may be properly denied in instances where the cases are at different stages of preparedness for trial."). To be clear, the United States has to do more than simply review the discovery exchanged to date and deposition transcripts in the Non-FTCA Cases. Among other things, there are important issues regarding the scope of the FTCA's waiver of sovereign immunity that also must be the subject of further discovery, motion practice, and resolution by a court before a trial may proceed on any FTCA claims. *See supra* at 9–13.[9]

For these reasons, the Court should refuse to consolidate the FTCA and Non-FTCA Cases because the United States will suffer insurmountable prejudice and unfair disadvantages. *Cantrell*, 999 F.2d at 1011; *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 354 (2d Cir. 1993) ("it is possible to go too far in the interests of expediency and to sacrifice basic fairness in the process").[10]

_____

[9] Although significantly delaying the October 2020 trial could mitigate this prejudice, such a delay is not the panacea that it may first appear. The delay in and of itself weighs against consolidation. Manual Complex Lit. § 20.11 (4th ed.) ("Cases should not be consolidated if it would result in increased delay . . ."). Such a delay also still does not remedy the United States' other prejudices.

[10] *See also In re: Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2nd Cir. 1992) ("The systemic urge to aggregate litigation must not be allowed to trump [the Court's] dedication to individual justice, and [the Court] must take care that each individual plaintiff's—and defendant's—cause not be lost in the shadow of a

## E. Plaintiffs' Purported Prejudices Are Non-Existent or Minimal

In contrast, Plaintiffs' purported prejudices either do not exist or are minimal. First and foremost, the United States must dispel the Plaintiffs' notion that having the United States being both a non-party at fault in the Non-FTCA Cases and a defendant in the FTCA Cases is inherently and uniquely prejudicial, including "potentially forc[ing]" Plaintiffs to take inconsistent positions in the FTCA and Non-FTCA Cases regarding the United States' "role/fault in the Water Crisis." Pls.' Memo at 10. No such prejudice exists because the non-party United States' assessment of fault in the Non-FTCA Cases "shall not be introduced as evidence of liability" in the FTCA Cases. MCL § 600.2957(3).[11] Therefore, different proceedings—including the upcoming second bellwether pool proceedings before this Court and the state court cases—may result in different assessments of fault. Plaintiffs' alleged prejudice also is not isolated to the United States being a non-party, as Plaintiffs will be in the same position: (1) if they settle with any of the defendants in the Non-FTCA Cases;[12] or (2) when the state court

_____

towering mass litigation.").

[11] Plaintiffs also could avoid this predicament by taking the same position in both proceedings—as they would have to do if the cases were consolidated.

[12] *See Smiley v. Corrigan*, 638 N.W.2d 151, 154 (Mich. Ct. App. 2001) ("Tactically, [defendant] will try to minimize her fault at trial and will attempt to maximize the fault of [others]. On the other side, [plaintiff] will try to minimize the fault of the settling defendants, because she has already received money from them and now must try to maximize her award against the remaining defendant . . . .

cases result in a different assessment of fault for the Veolia defendants, for example, than the jury reaches in the cases before this Court. At bottom, Plaintiffs' complaint is with Michigan's several liability regime—something consolidation cannot fix.

In addition, Plaintiffs overstate the possible extent of "multiple depositions of Plaintiffs" if the FTCA and Non-FTCA Cases remain separate. The first bellwether pool in the Non-FTCA Cases includes those "plaintiffs whose dates of birth are between April 25, 2008, and April 25, 2014, and who only claim lead-induced injuries." SACMO § X(A)(2). Under Proposed CMO 3 in the FTCA Cases, at most only four plaintiffs whose dates of birth fall within this range will be subject to written discovery and depositions. Proposed CMO 3 §§ III(A)–(E).

Even assuming the unlikely event that all four of these plaintiffs are also *Walters* Plaintiffs currently subject to discovery in the *In re Flint Water Cases*,[13] this Court's Discovery Coordination Protocol and the similar protocol submitted to Judge Parker mitigate the risk of duplicative discovery. *See Roxane Labs.*, 2013

_____

[W]e [] reject[] [plaintiff]'s argument that it is fundamentally unreasonable to force a plaintiff to 'defend' settling tortfeasors. . . . [T]he very nature of litigation imposes the burden on the plaintiff to prove that the primary fault rests with the defendant at trial . . . .").

[13] In all likelihood, the actual number of Plaintiffs that would be subject to discovery under Proposed CMO 3 will be less, since the *Meeks* Plaintiffs represent less than 12% of all plaintiffs in the FTCA Cases, from which a random sample will be taken. Proposed CMO 3 § III(A)–(E).

WL 5217571, at *3 ("The Court can . . . coordinate discovery and minimize the risk and burden of duplicative discovery even without consolidation.") (collecting cases). Both protocols require the exchange of discovery responses between the FTCA and Non-FTCA Cases. SACMO § I(D); Exh. A § II.A. In addition, both protocols require that witnesses be deposed only once across the multiple federal and state Flint-related cases, except upon a showing of good cause. SACMO § I; Exh. A § II(G)(3).

For all these reasons, the Court should exercise its discretion not to consolidate the FTCA and Non-FTCA Cases.

### III.    Staying *Meeks* Is a More Appropriate Remedy

From both their motion to consolidate and their statements during Judge Parker's February 4, 2020 status conference, at least part of Plaintiffs' reasons for moving to consolidate the FTCA Cases before this Court appears to be that Plaintiffs are stretched thin litigating *Walters* and do not want to take on the added burden of litigating *Meeks*. The United States is not unsympathetic, but submits that a more appropriate remedy for this concern would be to stay *Meeks* pending resolution of the first bellwether proceeding in the *In re FTCA Flint Water Cases*. To be clear, the United States' position remains that *Meeks* should be consolidated with and proceed as part of the *In re FTCA Flint Water Cases* before Judge Parker.

That said, if Plaintiffs moved Judge Parker to stay *Meeks*, the United States would not object.

## CONCLUSION

The Court should deny Plaintiffs' motion to consolidate because common issues of law or fact do not predominate and, even if they did, the Court should exercise its discretion not to consolidate the FTCA and Non-FTCA Cases.

Dated: February 21, 2020

Respectfully submitted,

Joseph H. Hunt
Assistant Attorney General, Civil Division

J. Patrick Glynn
Director, Torts Branch

Christina M. Falk
Assistant Director, Torts Branch

*s/ Eric Rey*
Eric Rey (DC Bar # 988615)
Jason T. Cohen (ME Bar # 004465)
Michael L. Williams (DC Bar # 471618)
Trial Attorneys, Tort Branch
Environmental Tort Litigation
P.O. Box 340
Ben Franklin Station
Washington, DC 20004
Phone: 202-616-4224
eric.a.rey@usdoj.gov
jason.t.cohen@usdoj.gov
michael.l.williams@usdoj.gov

23

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2020, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon all counsel of record.

<u>*s/ Eric Rey*_____</u>
ERIC REY

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FTCA Flint Water Cases

_____/

This Order Relates to:

ALL CASES

Civil No. 4:17-cv-11218
(Consolidated)

Linda V. Parker
United States District Judge

_____

**STIPULATED DISCOVERY COORDINATION PROTOCOL ORDER**

_____

I.    **Discovery Coordination Protocol**

    A.    **Scope**

(1)    The purpose of this Order is to effectuate efficiency and limit duplication in the discovery processes associated with litigation arising out of claims made regarding the use of the Flint River as a water source.

(2)    This Order is not intended to serve as an instrument to circumvent each Judge's authority over his or her own docket, but rather as an instrument that allows for notice, attendance, and participation, if appropriate, in the discovery processes in the various venues where litigation involving the same or similar parties are pending in actions arising out of the same or similar events.

(3)     This Order shall apply to all cases, currently or in the future, consolidated or coordinated into the *In re FTCA Flint Water Cases* pending before the Honorable Linda V. Parker. In that regard, it applies to all discovery permitted under the Federal Rules of Civil Procedure, including, without limitation: (a) depositions noticed under Rule 30; (b) document requests and requests to inspect and/or permit entry onto property issued under Rule 34; (c) subpoenas *duces tecum* for documents or depositions issued under Rule 45  (d)  interrogatories  under  Rule 33; (e) motions for physical and mental examination under Rule 35; and (f) requests  for  admission under Rule 36.

(4)     The Court recognizes that effective coordination will require the approval and cooperation of the judges in the various state and federal cases that are not consolidated with the *In re FTCA Flint Water Cases*, including the entry of a complementary order(s) sufficient to accomplish that coordination for the *In re Flint Water Cases*, Civil No. 5:15-cv-10444, before the Honorable Judith E. Levy in the Eastern District of Michigan[1], *In re Flint Water Litigation*, Case No. 17-108646-

---

[1] The Honorable Judith E. Levy entered Discovery Coordination Protocol provisions in a Second Amended Case Management Order on November 16, 2019, in *In re Flint Water Cases*, Civil No. 5:15-cv-10444.

2

NQ, before the Honorable Richard B. Yuille in the Circuit Court for the County of Genesee, Michigan[2], and cases in other venues and the Michigan Court of Claims.

### B.    Definitions

(1)    "*In re FTCA Flint Water Cases*" means all cases, currently or in the future, consolidated or coordinated into the above-captioned Flint Federal Tort Claim Act cases pending before the Honorable Linda V. Parker.

(2)    "FTCA plaintiffs" means each plaintiff who is a plaintiff to any of the cases naming the United States as a defendant, currently or in the future, consolidated or coordinated into the *In re FTCA Flint Water Cases*.

(3) "Federal Flint Water Cases" means all cases that are, currently or in the future, consolidated or coordinated into: (a) the above captioned *In re FTCA Flint Water Cases*, (b) *In re Flint Water Cases*, Civil No. 5:15-cv-10444, before the Honorable Judith E. Levy in the Eastern District of Michigan, and (c) any other federal court cases for which the Court determines that discovery coordination would be in the interest of justice.

(4) "State Flint Water Cases" means, subject to the entry of any necessary complementary order(s), all cases that are, currently or in the future, consolidated or

---

[2] The Honorable Richard B. Yuille entered a complementary discovery coordination order on October 1, 2018, in *In re Flint Water Litigation*, Case No. 17- 108646-NQ.

coordinated into: (a) the *In re Flint Water Litigation*, Case No. 17-108646-NQ, in the Circuit Court of Genesee County, Michigan, (b) the several legionella related cases previously transferred from Judge Fullerton to Judge Yuille in Genesee County; (c) *Tamara Nappier et al. v. Snyder et. al.*, Case No. 16-71 in the Michigan Court of Claims; and (d) any other state court cases for which the Court determines that discovery coordination would be in the interest of justice.

(5) "Flint Water Cases" means the Federal Flint Water Cases and the State Flint Water Cases, collectively.

## II.    Phases of Discovery Coordination

### A.    Prior Written Discovery

(1)   To the extent counsel for plaintiffs in *In re FTCA Flint Water Cases* have participated or received written discovery materials before the date of this order in the Flint Water Cases, such counsel for plaintiffs in *In re FTCA Flint Water Cases* will provide five categories of written discovery materials to counsel for the United States within 30 days of this order; specifically:

a.  Interrogatories served by plaintiffs and answers provided in response by any defendant in Flint Water Cases,

b.  Requests for production served by plaintiffs and responses and documents provided in response by any defendant in Flint Water Cases,

c.  Requests for admission served by plaintiffs and responses provided in response by any defendant in Flint Water Cases,

d.  Subpoenas that were issued to any non-parties in the Flint Water Cases litigation and responses and documents provided in response by any non-party to Flint Water Cases,

e.  Freedom of Information Act (FOIA) requests, either based on federal or state statutory authority, that were issued to any party or non-parties in the Flint Water Cases and responses and documents provided in response by any party or non-party to Flint Water Cases, except for FOIA requests, responses, and documents sent to or received by the U.S. Environmental Protection Agency.

(2)  Where available, counsel for FTCA plaintiffs will provide documents or materials to counsel for the United States in an electronic format and, to the extent practicable, in the same native electronic format, including any potential metadata or associated information, that was used when the information originally was made available to counsel in the Flint Water Cases.

(3)  If voluminous documents are available to be provided in any of the categories (II)(A)(1)(a)-(e), above, then counsel for the FTCA plaintiffs may request that the United States compensate plaintiffs' counsel for reasonable reproduction or copying costs. Counsel for plaintiffs in *In re FTCA Flint Water Cases* and the United States shall meet and confer about the potential scope and nature of any costs to be reimbursed prior to incurring the costs.

(4)  If a confidentiality order is needed prior to providing any information or documents to be provided in any of the categories (II)(A)(1)(a)-(e), above, then counsel for plaintiffs in *In re FTCA Flint Water Cases* and the United States will

meet and confer to determine the scope of any confidentiality order that may need to be entered by this Court and will endeavor to submit any needed orders as agreed proposed orders for approval by this Court.

### B.   Prior Depositions

(1)   To the extent counsel for plaintiffs in *In re FTCA Flint Water Cases* have participated in or received copies of any depositions taken before the date of this order in the Flint Water Cases, such  counsel for plaintiffs in the *In re FTCA Flint Water Cases* shall, within 30 days after the date of this order, file with this Court a list that sets forth: (a) the full caption of each case in which he or she has participated in such depositions, (b) the name of each person or entity deposed in each such action, (c) the name of the party and attorney who noticed each such deposition, (d) the date(s) on which the deposition was taken, (e) all means by which the deposition was recorded, whether stenographically, audiovisually, or otherwise, and (f) whether any testimony taken or exhibits marked at the deposition are subject to the terms of any confidentiality or other protective order entered in the case in which the deposition was taken.

(2)    To the extent counsel for plaintiffs in *In re FTCA Flint Water Cases* have participated before the date of this order in depositions taken in Flint Water Cases, such counsel shall supply complete and accurate copies of the transcripts, videotapes, and other recordings of, and the exhibits to, all such depositions to all

counsel for the United States in *In re FTCA Flint Water Cases*. Counsel for the United States agrees to reimburse counsel providing them for the reasonable actual cost of providing the copies. Counsel for plaintiffs in *In re FTCA Flint Water Cases* and the United States shall meet and confer about the potential scope and nature of any costs to be reimbursed prior to incurring the costs.

(3)     If a confidentiality order is needed prior to providing any of the deposition materials described in provisions (II)(B)(1)-(2), above, then counsel for plaintiffs in *In re FTCA Flint Water Cases* and the United States will meet and confer to determine the scope of any confidentiality order that may need to be entered by this Court and will endeavor to submit any needed orders as agreed proposed orders for approval by this Court.

(4)     Where available, counsel for FTCA plaintiffs will provide deposition materials to counsel for the United States in an electronic format and, to the extent practicable, in the same native electronic format, including any potential metadata or associated information, that was used when the deposition materials originally were made available to counsel in the Flint Water Cases.

### C.     Certification by counsel for FTCA plaintiffs

(1)     Within seven days of providing all information and documents set forth in (II)(A)(1)(a)-(e) and (II)(B)(1)-(2), above, to counsel for the United States,

counsel for the plaintiffs in *In re FTCA Flint Water Cases* shall certify and notify the Court that the process has been completed.

### D.    Written Discovery to United States

(1)    As of the date both this order and the Court's Case Management Order No. 3 have been entered for the *In re FTCA Flint Water Cases*, the FTCA plaintiffs may issue written discovery requests to the United States, if desired, to include interrogatories (maximum 30), requests for production (maximum 50), and requests for admission (maximum 45). The maximum numbers shall include sub-parts to any particular interrogatory, request for production, or request for admission.

### E.    EPA Depositions

(1)    After 30 days of the date when plaintiffs in *In re FTCA Flint Water Cases*  have certified, pursuant to paragraph (II)(C), that they have provided to counsel for the United States prior written discovery and deposition materials in their possession from the Flint Water Cases, the FTCA plaintiffs may notice additional depositions of EPA employees, if desired.

(2)    Any EPA witness may be deposed only once in the Flint Water Cases and for a total of two days, comprising a maximum of 16 hours of time on-the-record for the deposition. Provided, however, that the seven EPA witnesses who testified previously for a maximum of 3 hours, pursuant to this Court's Case Management Order No. 1 for *Burgess v. United States*, may be deposed for a maximum of sixteen

(16) hours of time minus the amount of time each witness testified previously. Of the sixteen (16) hours permitted on-the-record hours, seven (7) shall be allocated to Defendants in the Flint Water Cases and nine (9) to the Plaintiffs. Counsel for the United States may ask questions during the deposition after questioning by the taking attorneys, but any time counsel for the United States uses during a particular EPA deposition will not be counted against the total amount of time available for a particular deposition.

(3)    No non-party witness may be deposed for more than fourteen (14) on-the-record hours, unless otherwise agreed by all interested parties or with leave of court. Seven (7) of the fourteen (14) on-the-record hours shall be allotted to counsel for the plaintiffs and seven (7) shall be allotted to Defendants in the Flint Water Cases. Counsel for the United States may ask questions during the deposition after questioning by the taking attorneys, but any time counsel for the United States uses during a particular EPA deposition will not be counted against the total amount of time available for a particular deposition.

(4)    A maximum of 20 depositions of employees of EPA will be permitted during merits discovery for *In re FTCA Flint Water Cases.* There shall be no additional depositions of employees of EPA except by order of the Court based on a showing of good cause or by agreement of all interested parties.

(5)      Counsel for FTCA plaintiffs shall meet and confer with counsel for the United States concerning the specific dates for any particular depositions of EPA employees to determine dates mutually practicable for counsel and EPA employees prior to serving notices for depositions.

(6)      Aside from counsel of record in *In re FTCA Flint Water Cases*, any counsel of record in the Flint Water Cases may attend and participate in EPA depositions noticed and scheduled for *In re FTCA Flint Water Cases*. All counsel participating must meet and confer to develop an allocation of time for asking questions during any particular deposition. It is the responsibility of the counsel participating and taking a particular deposition to determine how time may be shared by counsel. Counsel for the United States may ask questions during the deposition after questioning by the taking attorneys, but any time counsel for the United States uses during a particular EPA deposition will not be counted against the total amount of time available for a particular deposition.

### F.    FTCA Plaintiff Depositions

(1)      This Court's Case Management Order No. 3 will create a plan and schedule in *In re FTCA Flint Water Cases* for bellwether plaintiff selection, disclosures, written discovery, depositions, and discovery from treating physicians and non-parties related specifically to FTCA plaintiffs. (2)      Prior to the first bellwether plaintiff deposition, as set forth in this Court's Case Management Order

10

No. 3, the parties in *In re FTCA Flint Water Cases* shall meet and confer and submit an agreed order, or competing orders, if necessary, to address deposition attendance by counsel in the Federal Flint Water Cases and the disclosure of confidential documents and exhibits.

### G.   Additional Depositions

(1)   Upon certification by counsel for plaintiffs in *In re FTCA Flint Water Cases* that both prior written discovery and prior deposition materials in plaintiffs' possession from Flint Water Cases have been provided to counsel for the United States, pursuant to paragraph (II)(C), above, the parties in *In re FTCA Flint Water Cases* shall meet and confer and submit an agreed order, or competing orders, if necessary, to address:

a.   the protocol for counsel for the United States in *In re FTCA Flint Water Cases* to attend and/or participate in additional depositions to be taken pursuant to deposition notices in the Flint Water Cases,

b.   the potential need to issue Rule 45 subpoenas for documents and/or depositions of individuals/entities that are not parties in *In re FTCA Flint Water Cases.*

(2)   Orders developed pursuant to paragraph (II)(B)(1)(a)-(b), above, will be consistent, to the extent practicable and appropriate, with the *Deposition Protocol Order* provisions of Judge Levy's November 16, 2019, Second Amended Case Management Order and the terms of Judge Yuille's *Discovery Coordination Protocol Order*, entered May 10, 2019.

11

(3)     A witness may be deposed only once in the Flint Water Cases and for a maximum number hours of on-the-record time for a deposition as set forth herein, except by order of the Court based on a showing of good cause or by agreement of all interested parties. For purposes of this order, good cause includes, without limitation, a party's not having had a meaningful opportunity to depose a witness because a complementary discovery coordination protocol order has not been entered in cases involving that party.

(4)     Notwithstanding the general maximum number of hours rule herein, a party may depose as a fact witness under Rule 30(b)(1) or Rule 45, or the comparable state court procedural rule if the deposition is noticed in a state court proceeding, an individual who has been previously deposed or will be deposed solely as an entity's designee under Rule 30(b)(6) or the comparable state court procedural rule; but in such case the individual may be deposed only once in his or her capacity as a designee and only once in his or her individual capacity. Nothing in this order shall be to the prejudice of any party's or witness's right to seek the protection of any court of competent jurisdiction from a deposition which the party or witness considers to be objectionable under the applicable law.

(5)     All parties to the *In re FTCA Flint Water Cases* shall endeavor to avoid service of discovery that is duplicative of discovery already completed after the date of this order in the Flint Water Cases.

12

Dated: January 15, 2020                    Respectfully,

By: s/ Michael L. Pitt                     By: s/ Michael L. Williams
Michael L. Pitt (P24429)                   Michael L. Williams (DC Bar #471618)
Cary S. McGehee (P42318)                   Eric Rey (DC Bar # 988615)
Beth M. Rivers (P33614)                    Trial Attorney for Defendant
Counsel for *Burgess* Plaintiffs          U.S. Department of Justice
Pitt McGehee Palmer & Rivers, PC           P.O. Box 340
117 W. Fourth Street, Suite 200            Ben Franklin Station
Royal Oak, MI 48067                        Washington, DC 20004
(248) 398-9800                             Phone: 202-616-4224
mpitt@pittlawpc.com                        michael.l.williams@usdoj.gov
cmcgehee@pittlawpc.com                     eric.a.rey@usdoj.gov
brivers@pittlawpc.com

By: s/ Patrick J. Lanciotti                By: s/ Julie H. Hurwitz
Hunter Shkolnik                            Julie H. Hurwitz P34720
Paul J. Napoli                             Counsel for the *Burgess* Plaintiffs
Counsel for the *Thomas, Abraham,*        GOODMAN & HURWITZ, PC
*Adams,* and *Berry* Plaintiffs           1394 E. Jefferson Ave.
Napoli Shkolnik PLLC                       Detroit, Michigan 48207
360 Lexington Avenue, 11th Floor           Telephone: (313) 567-6170
New York, NY, 10017                        jhurwitz@goodmanhurwitz.com
Tel: (212) 397-1000
planciotti@napolilaw.com
hunter@napolilaw.com
pnapoli@napolilaw.com

By: s/ Valdemar L. Washington              By: s/ Teresa C. Bingman
Valdemar L. Washington (P27165)            Teresa Caine Bingman P56807
Counsel for the *Anderson* Plaintiffs     Counsel for the *Burgess* Plaintiffs
Washington Legal                           The Law Offices of Teresa A. Bingman
P.O. Box 187                               1425 Ambassador Drive
Flint, MI 48501                            Okemos, MI 48864
Phone: 810-407-6868                        (877) 957-7077
Fax: 810-265-7315                          tbingman@bingmanlaw.com
val@vlwlegal.com



# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FTCA Flint Water Cases

Civil No. 4:17-cv-11218
(Consolidated)

Linda V. Parker
United States District Judge

_____/

This Order Relates to:

ALL CASES

---

**STIPULATED CASE MANAGEMENT ORDER NO. 3**

---

This Stipulated Case Management Order Number 3 (CMO 3) reflects the agreement to date between the parties with respect to case management in the *In re FTCA Flint Water Cases*. The Court will enter additional or supplemental orders as necessary as these cases progress.

**I.      Special Master**

Within fourteen (14) days from entry of this CMO 3, the parties shall meet and confer and then submit to the Court their positions on who should be appointed as Special Master—and for what duties—under Rule 53. The parties submission shall address whether Deborah E. Greenspan, who is currently serving as Special Master in the *In re Flint Water Cases* pending before Judge Levy, could serve as

1

Special Master in the *In re FTCA Flint Water Cases*. The Court shall then issue an order under Rule 53 appointing a Special Master ("Special Master Order").

## II.   FTCA Plaintiffs Liaison Counsel

Within fourteen (14) days from entry of this CMO 3, Plaintiffs' counsel shall file a notice designating no more than two Plaintiffs' counsel ("FTCA Plaintiffs Liaison Counsel") to serve as the Court's and the United States' points of contact.

## III.   Bellwether Proceedings

The *In re FTCA Flint Water Cases* consist of tort claims asserted by over 8,000 individual plaintiffs ("FTCA Plaintiffs"). The parties agree and the Court finds that a bellwether process is the most efficient, fair, and practical method for litigating these claims. *See* Manual Complex Lit. § 22.312 (4th ed.). To effectuate the bellwether process, the parties agree to—and the Court orders them to adhere to— the following process. *See* Manual Complex Lit. § 22.315 (4th ed.).

### A. Claim Categories

The parties agree that the following seven (7) claim categories should identify a representative range of cases:

1. FTCA Plaintiffs who claim personal injuries other than wrongful death and whose dates of birth are during or after 2012;

2. FTCA Plaintiffs who claim personal injuries other than wrongful death and whose dates of birth are during or between 2001 and 2011;

3. FTCA Plaintiffs who claim personal injuries other than wrongful

death and whose dates of birth are during or before 2000;

4. FTCA Plaintiffs who assert wrongful death claims;

5. FTCA Plaintiffs who assert property damages;

6. FTCA Plaintiffs who assert business losses; and

7. FTCA Plaintiffs who submitted an FTCA administrative claim to EPA on or after January 31, 2018

(hereinafter, "Seven Claim Categories").

**B. Census**

In order to organize the FTCA Plaintiffs' claims into the Seven Claim Categories, FTCA Plaintiffs Liaison Counsel shall provide the Special Master and counsel for the United States a single native Excel spreadsheet that contains at least the following information for each of the FTCA Plaintiffs:

1. Last Name;

2. First Name;

3. Middle Name or Initial;

4. Year of Birth;

5. Year of Death (if applicable);

6. Whether claiming personal injuries, wrongful death, property damages, or business losses in the *In re FTCA Flint Water Cases*; and

7. Date(s) the claimant's FTCA administrative claim was sent to EPA

(hereinafter, "Census Spreadsheet").

The parties shall meet with the Special Master within fourteen (14) days from entry of the Special Master Order to reach agreement on the form of the Census Spreadsheet. FTCA Plaintiffs Liaison Counsel shall de-duplicate the Census Spreadsheet prior to providing it to the Special Master and counsel for the United States, such that an individual FTCA Plaintiff only appears once.

### C. Categorizing Claims

Within twenty-one (21) days from FTCA Plaintiffs Liaison Counsel providing the completed Census Spreadsheet, the Special Master shall provide FTCA Plaintiffs Liaison Counsel and counsel for the United States a single native Excel spreadsheet that categorizes all of the FTCA Plaintiffs in the Census Spreadsheet into one or more of the Seven Claim Categories ("Initial Lists"). Within fourteen (14) days of the parties' receipt of the Initial Lists, the parties shall meet and confer with the Special Master to try to resolve any issues or concerns with the Initial Lists and to finalize the lists. Within fourteen (14) days from this meet and confer, the parties shall either agree upon a final set of lists ("Final Lists") or present any dispute to the Court for resolution.

### D. FTCA Disclosure Group

Within fourteen (14) days of either the parties agreeing to—or the Court resolving any disputes regarding—the Final Lists, the Special Master shall randomly

4

select twenty (20) FTCA Plaintiffs from each of the Seven Claim Categories (for a total of 140; hereinafter, "FTCA Disclosure Group"), using a selection process to which the parties agree and which will result in the selection of a random sample. To ensure the selection of 140 unique FTCA Disclosure Group Plaintiffs, if the same FTCA Plaintiff is randomly selected in multiple categories, such a FTCA Plaintiff shall be allocated to the category that first appears in the Seven Claim Categories and the Special Master shall then randomly select a replacement for the remaining affected categories (*e.g.*, if a FTCA Plaintiff is randomly selected in both category 3 and 5, that FTCA Plaintiff will be allocated to category 3 and a new random selection will be made for category 5).

Within sixty (60) days from the selection of the FTCA Disclosure Group, FTCA Plaintiffs Liaison Counsel shall provide to counsel for the United States completed FTCA Plaintiff fact sheets for the FTCA Disclosure Group Plaintiffs, together with authorizations for release of records specified in the facts sheets and any documents specified in the fact sheets which are in the FTCA Disclosure Group Plaintiffs' possession, custody, or control (as those words are used in Rule 34(b)) (hereinafter, the "Disclosure Group Production"). To the extent a FTCA Disclosure Group Plaintiff has been the subject of any discovery or fact sheets in any other federal or state case regarding similar issues, FTCA Plaintiffs Liaison Counsel shall provide such discovery responses along with the FTCA Disclosure Group Plaintiffs'

completed fact sheets.

Within fourteen (14) days of entry of the Special Master Order, the parties shall submit to the Court agreed upon or competing forms of the FTCA Plaintiff fact sheets and authorizations.

### E. FTCA Discovery Group

Within thirty (30) days from the Disclosure Group Production and subject to Section III.G.2 (FTCA Plaintiffs' Fact Sheets) below, FTCA Plaintiffs Liaison Counsel and the United States will each select one FTCA Disclosure Group Plaintiff from each of the Seven Claim Categories for a total of fourteen (14) FTCA Plaintiffs ("FTCA Discovery Group"). If there is overlap between the FTCA Plaintiffs selected by the two sides as FTCA Discovery Group Plaintiffs (either within a category or across categories), the Special Master shall randomly select (using a selection process to which the parties agree and which will result in the selection of a random selection) additional FTCA Disclosure Group Plaintiffs until two are selected from of the Seven Claim Categories for a total of fourteen (14) unique FTCA Discovery Group Plaintiffs.

After the selection of the FTCA Discovery Group Plaintiffs, counsel for the United States may serve on each of the FTCA Discovery Group Plaintiffs no more than thirty (30) requests for production of documents and tangible things, twenty-five (25) interrogatories, and twenty-five (25) requests for admission, unless

otherwise agreed to by the parties or by leave of the Court.

Within thirty (30) days from the selection of the FTCA Discovery Group Plaintiffs, counsel for the United States may begin noticing testimonial depositions of FTCA Discovery Group Plaintiffs or other persons with knowledge relevant to the FTCA Discovery Group Plaintiffs' claims (except for depositions of experts disclosed under Rule 26(a)(2) that are addressed in Section III.F below) and may begin noticing and conducting entries upon land in the possession of control of the Discovery Group FTCA Plaintiffs for purposes of inspection, photographing, sampling, and testing.

### F. Meet and Confer for Future Bellwether CMO

Within thirty (30) days from the selection of the FTCA Discovery Group, the parties shall submit to the Court an agreed upon or competing case management order(s) to continue the bellwether process, including the following topics:

1. Completion of fact discovery;

2. Deadline to submit additional Notices of Non-Parties at Fault (as defined in Section V below);

3. Discovery of experts to be disclosed under Rule 26(a)(2), including treating physicians;

4. Federal Rule of Civil Procedure 35 examinations;

5. Dispositive motion deadline(s), including whether to have a separate motion for summary judgment deadline for statute of limitations issues; and

     6.  Selection process for bellwether trials.

**G. Integrity and Utility of the Bellwether Process**

    1.  <u>Inclusion on Final Lists</u>

The parties' agreed upon bellwether process relies upon both the Census Spreadsheet and the Final Lists being complete and accurate. Accordingly, if a FTCA Plaintiff is not included on any of the Final Lists, the United States may move to dismiss with prejudice that particular FTCA Plaintiff under Rule 41(b) or Rule 37(b).

Similarly, a FTCA Plaintiff may only pursue in the *In re FTCA Flint Water Cases* the category of damages for which the FTCA Plaintiff was affiliated with in the Final Lists (*e.g.*, a FTCA Plaintiff who is not on the property damages lists may not thereafter pursue a claim for property damages), unless that FTCA Plaintiff can demonstrate newly discovered evidence that, with reasonable diligence, could not have been discovered in time for that FTCA Plaintiff to be included in a particular one of the Seven Claim Categories in the Final List. The United States may move to dismiss with prejudice a particular claim that runs afoul of this limitation under Rule 41(b) or Rule 37(b).

    2.  <u>FTCA Plaintiffs' Fact Sheets</u>

To the extent a Disclosure Group FTCA Plaintiff's fact sheet (including authorizations) are incomplete, counsel for the United States shall notify FTCA

Plaintiffs Liaison Counsel within twenty-one (21) days of receipt of such fact sheet and FTCA Plaintiffs Liaison Counsel shall cure the insufficiency to the extent possible within twenty-one (21) days of receiving such notification. If FTCA Plaintiffs Liaison Counsel is unable to cure the insufficiency within this deadline and the insufficiency prejudices the United States' ability to evaluate a Disclosure Group FTCA Plaintiff's case, the United States may move to dismiss with prejudice that particular Disclosure Group FTCA Plaintiff under Rule 41(b) or Rule 37(b). If the United States so moves, the parties shall not select the Discovery Group FTCA Plaintiffs until the Court rules upon the motion(s) to dismiss. If the Court dismisses a Disclosure Group FTCA Plaintiff, the Special Master shall randomly select a replacement Disclosure Group FTCA Plaintiff from the Final Lists using the parties' previously agreed upon random selection process and the parties shall meet and confer regarding—and submit to the Court—any necessary modifications to this CMO 3, including extending deadlines in order for all replacement Disclosure Group FTCA Plaintiffs to complete their fact sheets and authorizations.

3. <u>Settlements and Voluntary Dismissals</u>

If the United States settles with a Disclosure Group FTCA Plaintiff or a Discovery Group FTCA Plaintiff, FTCA Plaintiffs Liaison Counsel shall select the replacement FTCA Plaintiff. If FTCA Plaintiffs voluntarily dismiss a Disclosure Group FTCA Plaintiff or a Discovery Group FTCA Plaintiff, counsel for the United

States shall select the replacement FTCA Plaintiff. If either party believes one or more such settlements or voluntary dismissals threatens the utility of the bellwether process, such a party may seek relief from the Court.

## IV.    Rule 26(a)(1) Disclosures

By March 5, 2020, the parties shall serve on each other initial disclosures under Rule 26(a)(1) relating to issues of liability relevant regardless of the particular FTCA Plaintiffs to be selected in the bellwether process.

Within thirty (30) days from the selection of the Discovery Group FTCA Plaintiffs, the parties shall serve on each other any remaining disclosures required under Rule 26(a)(1) in order to proceed with the cases for each of the Discovery Group FTCA Plaintiffs.

## V.    Notices of Non-Parties at Fault

By March 5, 2020, the United States shall file its Notice of Non-Parties at Fault pursuant to MCR 2.112(K) (hereinafter, "Notices of Non-Parties at Fault") that relate to issues of liability relevant regardless of the particular FTCA Plaintiffs to be selected in the bellwether process.

Pursuant to Section III.F, the parties shall submit to the Court a proposed case management order that addresses the process for submitting additional Notices of Non-Parties at Fault, including those specific to the Discovery Group FTCA Plaintiffs.

## VI.   Future Discovery Orders

Within thirty (30) days from entry of this CMO 3, the parties shall meet and confer and then submit to the Court either agreed upon or competing versions of the following discovery-related orders:

1. Confidentiality Order

2. Federal Rule of Evidence 502(d) Order

3. Document Production and ESI Protocol

4. Deposition Protocol

## VII.   Discovery Coordination Protocol

On January 15, 2020, the Parties submitted to the Court an agreed complementary Discovery Coordination Protocol Order to avoid duplicative/inefficient depositions/discovery in separate dockets of Flint-related cases pending in federal and state courts in Michigan.

## VIII.   Future Status Conferences

At least fourteen (14) days before any status conference in the *In re Flint FTCA Cases*, FTCA Plaintiffs Liaison Counsel and counsel for the United States shall each file proposed agenda items for the status conference. After receipt of the proposed agendas and prior to the status conference, the Court will endeavor to file an agenda for the status conference, including any additional items the Court wishes to discuss.

Dated: January 15, 2020                    Respectfully,

By: s/ Michael L. Pitt                     By: s/ Michael L. Williams
Michael L. Pitt (P24429)                   Michael L. Williams (DC Bar #471618)
Cary S. McGehee (P42318)                   Eric Rey (DC Bar # 988615)
Beth M. Rivers (P33614)                    Trial Attorney for Defendant
Counsel for *Burgess* Plaintiffs           U.S. Department of Justice
Pitt McGehee Palmer & Rivers, PC           P.O. Box 340
117 W. Fourth Street, Suite 200            Ben Franklin Station
Royal Oak, MI 48067                        Washington, DC 20004
(248) 398-9800                             Phone: 202-616-4224
mpitt@pittlawpc.com                        michael.l.williams@usdoj.gov
cmcgehee@pittlawpc.com                     eric.a.rey@usdoj.gov
brivers@pittlawpc.com

By: s/ Patrick J. Lanciotti                By: s/ Julie H. Hurwitz
Hunter Shkolnik                            Julie H. Hurwitz P34720
Paul J. Napoli                             Counsel for the *Burgess* Plaintiffs
Counsel for the *Thomas, Abraham,*         GOODMAN & HURWITZ, PC
*Adams,* and *Berry* Plaintiffs            1394 E. Jefferson Ave.
Napoli Shkolnik PLLC                       Detroit, Michigan 48207
360 Lexington Avenue, 11th Floor           Telephone: (313) 567-6170
New York, NY, 10017                        jhurwitz@goodmanhurwitz.com
Tel: (212) 397-1000
planciotti@napolilaw.com
hunter@napolilaw.com
pnapoli@napolilaw.com

By: s/ Valdemar L. Washington              By: s/ Teresa C. Bingman
Valdemar L. Washington (P27165)            Teresa Caine Bingman P56807
Counsel for the *Anderson* Plaintiffs      Counsel for the *Burgess* Plaintiffs
Washington Legal                           The Law Offices of Teresa A. Bingman
P.O. Box 187                               1425 Ambassador Drive
Flint, MI 48501                            Okemos, MI 48864
Phone: 810-407-6868                        (877) 957-7077
Fax: 810-265-7315                          tbingman@bingmanlaw.com
val@vlwlegal.com

12